(20 App. Div. 583.)

HALPIN v. MUTUAL BREWING CO. et al.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. CORPORATIONS—DIRECTORS.
    In the absence of an express declaration or any statute or controlling usage to the contrary, one elected director of a corporation is presumed to accept.

2. SAME—ABANDONMENT OF OFFICE.
    If one is elected a director in January, his omission to attend the meetings between January and the following April does not, as matter of law, constitute such a long-continued neglect of duty as to amount to an abandonment of his office, and to warrant his associates in declaring it vacant, and thus virtually removing him, without the notice prescribed by the by-laws in case of a removal.

3. SAME—ACTION AGAINST OFFICERS FOR MISMANAGEMENT.
    The acquiescence of all the stockholders of a corporation in the action of the directors in dealing with its assets, for the purpose of depriving future creditors of payment for their just claims, will not avail as a defense to a suit brought by an officer of the corporation, under Code Civ. Proc. § 1781, against the directors thereof, for mismanagement.

4. SAME—INSOLVENCY—PREFERRING OFFICERS.
    The fact that a corporation which gives its notes to one of its officers is insolvent, or on the verge of insolvency, and that the manifest purpose of the transaction was to enable him to obtain a preferential lien on the corporate assets, renders them unenforceable by him.

5. RESCISSION OF CONTRACT—TENDER OF BENEFITS RECEIVED.
    The proper course in equity, in cases where the plaintiff seeks the rescission of a contract under which he has received property, is to offer in the complaint to restore it to the defendant. The court in its decree may provide for restitution as a condition of granting the desired relief.

Appeal from special term, Queens county.

Action by Paul Halpin against the Mutual Brewing Company and others. Judgment for plaintiff, and the Mutual Brewing Company and certain other defendants appeal. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

John A. Dulton, for appellants Coleman.

Frederick Eder, for appellant Eder.

Benjamin Yates, for respondent and receiver of Mutual Brewing Co.

WILLARD BARTLETT, J. The plaintiff brought this action as a trustee and the vice president of the Mutual Brewing Company, to enforce the remedies for the mismanagement of a corporation which are provided for by sections 1781 and 1782 of the Code of Civil Procedure. See Gildersleeve v. Lester, 68 Hun, 532, 22 N. Y. Supp. 1026; Skinner v. Smith, 134 N. Y. 240, 31 N. E. 911. The only ground on which his right to sue is questioned is that he had ceased to be a trustee and officer at the time the action was commenced; but we think the court below properly decided against the appellants on this point. There was no doubt that he had been lawfully chosen trustee and vice president; and the proceedings of the other trustees, whereby they assumed to declare his office vacant, were without warrant under the by-laws of the corporation, and were ineffectual for the purpose. He became a trustee and the vice president of the corporation on February 10, 1892, at the only meeting of the trustees which he ever attended, and was re-elected to both offices on January 13, 1893. At the request of the appellants, the learned trial judge has found that the plaintiff in no manner signified his acceptance of such election as director or vice president of the said defendant company for the year 1893, and never attended any of the meetings of the said company during that year. On the 13th day of April, 1893, at an adjourned meeting of the trustees, a resolution was passed declaring vacant the office of trustee and vice president held by the plaintiff. While the by-laws of the Mutual Brewing Company provided for the removal of a trustee, on due cause shown, by a majority vote of all the other trustees, this was authorized only when a written notice of such proposed removal had been given, and there had been no notice of an intention to remove the plaintiff. The appellants insist that the trustees did not attempt or assume to remove Mr. Halpin, but merely declared his office vacant, which was a very different thing, and a thing which they contend they had a right to do. The very authority which they cite on this point, however, declares the rule to be that, in the absence of an express declaration or any statute or controlling usage to the contrary, one elected a director is presumed to accept. Spell. Priv. Corp. § 418. The plaintiff, therefore, was deemed to have accepted the offices to which he had been chosen, even if he had not affirmatively indicated that fact; and it cannot be held as matter of law that his omission to attend such meetings as there may have been between January and April constituted such a long-continued neglect of duty as

amounted to an abandonment of his office as trustee, and warranted his associates in declaring it vacant, and thus virtually removing him without the notice prescribed by the by-laws. The litigation relates chiefly to the alleged mismanagement of the business and affairs of the Mutual Brewing Company by three of its directors, Matthew Coleman, Michael T. Coleman, and Frederick Eder. Matthew Coleman, on account of his misappropriation and misapplication of moneys of the corporation, is directed by the judgment to pay $56,986.56 to the receiver of the Mutual Brewing Company; and, by reason of their action in permitting such misappropriation and misapplication on the part of Matthew Coleman, his fellow trustees, Michael T. Coleman and Frederick Eder, have been adjudged to pay to the receiver the sum of $23,949.27 each. The judgment also sets aside a chattel and real-estate mortgage, known as the "Dobbler mortgage," to the extent of $27,000, which would have been payable to Michael T. Coleman as the assignee thereof if its validity had been wholly maintained. The decree furthermore vacates two judgments obtained by Denis Coleman against the Mutual Brewing Company upon notes for $19,300 and $8,000, respectively, and adjudges the notes to be void as well as an agreement under which the larger note was given.

The record is a long one, and presents a case so complicated in its facts and figures that the reargument which we felt obliged to order was essential to a satisfactory disposition of the appeal, especially as we have not had the benefit of an opinion at special term, which would have been peculiarly valuable and helpful in a litigation of this character. In behalf of the appellant Michael T. Coleman, it is said the evidence shows that all the acts committed by him were done with the consent and acquiescence or subsequent ratification of all the stockholders of the Mutual Brewing Company, and hence that they could not properly be made the basis of any judgment against him. The proposition is that these transactions thus became valid and binding upon the corporation, inasmuch as they were neither mala in se nor mala prohibita, and no rights of creditors intervened. Hence it is argued that they cannot be assailed in the manner now attempted. Unfortunately for this view of the case, however, the trial court has found that they "were all part of a fraudulent scheme of the defendants Matthew Coleman, Frederick Eder, Michael T. Coleman, and Denis Coleman to obtain control of the property and assets of the Mutual Brewing Company, and appropriate the same to their own use, in fraud of the stockholders and creditors"; and this finding is justified by the evidence. There appears clearly to have been creditors in 1892 and 1893 whose interests were injuriously affected. The case, therefore, does not fall within the rule as stated by the learned counsel for the appellants and invoked in their behalf. It is true that the fraudulent scheme of depleting the property of the corporation seems to have been put into operation before the claims of these creditors accrued; but that does not make any difference. The acquiescence of all the stockholders of a corporation in the action of the directors in dealing with its assets, for the purpose of depriving future creditors of payment for their just claims, will not

avail as a defense to a suit brought by an officer under section 1781 of the Code of Civil Procedure. Nor do any of the cases cited for the appellants carry the doctrine of acquiescence so far. In Kent v. Mining Co., 78 N. Y. 159, there was no suggestion of any injury to creditors. In Skinner v. Smith, 134 N. Y. 240, 31 N. E. 911, it is expressly declared that creditors were not injured by the acts complained of. In Martin v. Manufacturing Co., 122 N. Y. 165, 25 N. E. 303, the ratification was upheld because, among other things, there were "no rights of creditors intervening." And in Little v. Garabrant, 90 Hun, 404, 35 N. Y. Supp. 689, Parker, J., says: "The question that we are considering assumes that the rights of creditors and of third parties do not intervene."

The proof is ample to support the conclusion of the learned trial judge that Matthew Coleman had unlawfully acquired property of the Mutual Brewing Company to the amount of $56,986.56. It would follow that the judgment was correct in requiring him to pay that sum, were it not for two items of credit which appear to have been overlooked. Matthew Coleman testified, without contradiction, that he contributed in cash $28,000 to the funds of the corporation, and paid obligations amounting to $12,000, making $40,000 in all. These statements are really not disputed, but in answer to the claim that here is a contribution of $40,000 for which Matthew Coleman is certainly entitled to credit, the respondent says that no attempt was made to charge him with anything like all the property of the Mutual Brewing Company which he had in fact appropriated, and that the $40,000 would be more than offset if Matthew Coleman had been charged in the judgment with the full amount chargeable against him under the proof. We must regard the findings on this part of the case, however, as conclusive upon the respondent, and cannot hold that the amount of money misappropriated by Matthew Coleman exceeded the sum found by the trial court. On the other hand, he, as an appellant, is at liberty to show that it is too large, and we think he has done so to the extent of $40,000. This amount must therefore be deducted.

There is another item of credit to which he claims to be entitled, in respect to which the facts are not so clear. This is a charge of $10,800 included in the money judgment against him, found by the court to be the amount of certain fictitious notes (i. e. notes signed by irresponsible persons, who owed the brewing company nothing), indorsed by Matthew Coleman, and discounted by the West Side Bank, upon which the bank has since recovered judgments against the Mutual Brewing Company. In the brief for the appellants submitted upon the reargument it is insisted that the corporation received full value for this paper, which was regularly discounted, and that the money went to pay other notes upon which the Mutual Brewing Company was liable, so that its indebtedness to the bank was not increased by the transaction. By procuring the bank to discount the fictitious notes, as they are called, the brewing company simply obtained a loan which it became obligated to pay, and Matthew Coleman, who conducted the transaction, inflicted no injury upon the brewing company, provided he applied the proceeds of that loan to the payment of honest obligations of the corporation. What he did, as we understand the

findings, was this: The brewing company had procured other notes of its customers to be discounted at the bank to the aggregate amount of $6,741.66. He took up these notes and returned them to the makers in exchange for renewal notes, thus canceling an obligation of $6,741.66 to the bank. The renewal notes, with some others belonging to the Mutual Brewing Company, the whole representing the sum of $8,666.46, Matthew Coleman took into his own possession, and he caused to be entered upon the books of the brewing company a statement that they had been transferred to Denis Coleman as collateral security for certain alleged loans by him to the company, aggregating $3,375. The trial judge found that these loans were not made at the times or in the manner claimed, and that Denis Coleman did not receive the renewal notes as collateral security for any loans made by him. The judgment directs him and Matthew Coleman to deliver said notes to the receiver.

There is no proof as to what was done with the balance of the proceeds of the fictitious notes over and above the $6,741.66 applied for the purpose of taking up the customers' notes on discount in the West Side Bank. We cannot assume that it was improperly used, in the absence of evidence to that effect. The only theory upon which it can be held that the Mutual Brewing Company was damnified by the transaction, so far as it is disclosed by the record, is that the renewal notes transferred to Denis Coleman are obligations upon which the company remains liable by reason of having indorsed them over to the present holder as collateral security for a debt. But this liability is guarded against by the adjudication that Denis Coleman is not entitled to them as security or otherwise, and by the direction in the judgment that they be delivered up. It seems to us, as to this branch of the case, that the Mutual Brewing Company is not shown to have suffered by what Matthew Coleman did with respect to the so-called fictitious notes, and that the money judgment against him is too large by the sum of $10,800 which they represent. Deducting from $56,986.56 the two items of $40,000 and $10,800, which have been discussed, and we have $6,186.56 as the amount to which the money judgment against Matthew Coleman must be reduced.

As has already been stated, the defendants Michael T. Coleman and Frederick Eder have been held liable for permitting Matthew Coleman to misapply and misappropriate the property of the Mutual Brewing Company while they were trustees of that corporation. The findings show how the amount of their liability has been arrived at. In the forty-fourth conclusion of law the court finds that Michael T. Coleman and Frederick Eder are indebted to the Mutual Brewing Company in the sum of $50,947.27, representing the total amount which they wrongfully and unlawfully allowed the said brewing company to pay to the New York County National Bank and the West Side Bank, and the debts of the New York and College Point Ferry Company and the Coleman Brewing Company, and a bill for beer sold, which they likewise allowed to be charged personally against Matthew Coleman. From this aggregate is deducted $27,000 on account of the invalid portion of the Dobbler mortgage, already mentioned. This leaves $23,947.27, chargeable against each of these defendants, Michael T.

Coleman and Frederick Eder. But it would seem that two of the items referred to in the forty-fourth conclusion of law represent misappropriations which occurred when Mr. Eder was not a trustee. The debt from the Coleman Brewing Company, $7,944.47, and the bill for beer, $8,819.48, were transferred to Matthew Coleman's personal account on April 30, 1890, six days after Mr. Eder had resigned from the board. He was not re-elected until January 14, 1891. Therefore, even if the money judgment against Matthew Coleman were to remain at the amount fixed by the trial court, the defendant Eder would be entitled to have the money judgment against himself reduced by deducting therefrom the sum of the two items which have been mentioned. This would leave a money judgment of $7,183.32 as against him, and $23,947.27 against Michael T. Coleman. Both these judgments, however, must be still further reduced in proportion to the reduction of the money judgment against Matthew Coleman from $56,986.56 to $6,186.56; that is, to about one-ninth of the amount in each instance. But we see no reason to doubt the correctness of that part of the decree which declares the notes given to the defendant Eder were invalid. Whatever claim he may have had against the Mutual Brewing Company, the trial court was amply justified in holding that these notes were not enforceable against the corporation, in view of the manifest purpose for which they were given and the use to which they were put. It was the case of an officer of a corporation, either already insolvent or on the verge of insolvency, seeking to acquire a preferential lien on the corporate assets by obtaining obligations upon which he could readily procure judgment. Throop v. Lithographic Co., 125 N. Y. 530, 26 N. E. 742.

The appeal of Denis Coleman remains to be considered. On March 25, 1893, an agreement was made between Denis Coleman and Matthew Coleman, as president of the Mutual Brewing Company, for the sale and transfer by the former to the corporation of certain hogsheads, trucks, and harness, for the sum of $19,300. The property which the brewing company received under this contract was not reasonably worth more than $5,175. The trial court, upon sufficient evidence, has adjudged the contract void, as constituting part of a fraudulent scheme by Matthew Coleman, Michael T. Coleman, and Frederick Eder to appropriate the property of the company to their own use. It has also adjudged void the note given in pursuance of the contract, and has directed the cancellation of the judgment thereon. The point is made that the validity of the agreement could not be denied upon the trial of this action, or, at all events, that the judgment goes too far, inasmuch as the Mutual Brewing Company has retained a considerable part of the property, and has neither offered to restore it nor been directed to do so by the decree. The proper course in equity, in cases where the plaintiff seeks the rescission of a contract under which he has received property, is to offer in the complaint to restore it to the defendant; but such an offer is not indispensable. The court in its decree may provide for restitution as a condition of granting the desired relief. See Kley v. Healy, 149 N. Y. 346, 352, 44 N. E. 150. The decree herein should have directed the Mutual Brewing Company to return to Denis Coleman the hogsheads, harness, and

47 N.Y.S.—27

trucks received from him under the contract of March 25, 1893, or should have permitted his note and the judgment thereon to stand for $5,175, the maximum value of said property as found by the trial court.

The judgment appealed from should be modified in accordance with the views expressed in this opinion, and as so modified should be affirmed, without costs of the appeal.    All concur.