(117 App. Div. 643)

### PRITZ et al. v. JONES et al.

(Supreme Court, Appellate Division, First Department. February 15, 1907.)

1. FRAUDULENT CONVEYANCES—TRANSACTIONS SUBJECT TO ATTACK.

A defendant furnished money to a third person with which to buy the stock of goods and business of a seller. Defendant never had in his possession any of the property sold. The seller was incompetent and paid

from the proceeds of the sale a debt due to defendant. *Held*, that a judgment creditor of the seller was not entitled to set aside the transaction as fraudulent.

**2. SAME.**

A debtor held a lease of a saloon for a year, with the right to renew from year to year so long as he bought his beer from the landlord. The landlord required the debtor to assume a mortgage on the premises. The mortgage was not a lien on anything ever owned by the debtor or transferred by him. The saloon building and fixtures were owned by the landlord. There was nothing to show that the landlord was attempting to enforce any claim secured by the mortgage. *Held*, that a judgment creditor of the debtor was not entitled to a cancellation of the mortgage as fraudulent.

**3. SAME—INTENT TO DEFRAUD CREDITORS.**

To set aside a transfer on the ground that it was intended thereby to defraud creditors, it must be shown that such intention existed on the part of both the transferror and transferee.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 10–14.]

**4. SAME—ACTION TO SET ASIDE CONVEYANCE—COMPLAINT—SUFFICIENCY.**

A complaint in an action to set aside a conveyance as fraudulent against creditors must show fraud in the conveyance, and must either allege a fraudulent intent or set forth the facts logically indicating the existence of such intent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 772, 776, 777.]

**5. SAME—TRANSFER OF PROPERTY BY INSOLVENT.**

An insolvent has a right to sell his property if he does so in good faith and without fraudulent intent, though the effect of the sale is to place his property beyond the reach of creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 138, 139.]

**6. SAME.**

An owner of a business worth $3,000 sold it for $1,950. He did not retain possession after the sale, and no credit was extended to him on an apparent possession thereof. The buyer took possession of the premises immediately after the sale. The owner applied almost all of the purchase price received to the payment of his debts. *Held* that, as between subsequent creditors of the seller and the buyer, there was nothing shown to warrant a setting aside of the sale as fraudulent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, §§ 61–65.]

**7. CANCELLATION OF INSTRUMENTS—CONTRACT OF SALE—INCOMPETENCY OF SELLER.**

A complaint in an action to set aside a transfer of personalty on the ground of the incompetency of the transferror, which alleges that the transferror was not in fit condition to transact any business, and was unable to understand his acts or the effect thereof, was insufficient for failing to allege that the transferror was insane at the time of the transfer and wholly incompetent to understand the nature of the transaction.

**8. SALES—FRAUD.**

A complaint in an action to set aside a transfer of personalty on the ground of the fraud of the transferee, which alleges that the transferee gave the transferror drinks of whisky and thereby rendered him unfit to consider any business propositions or to understand his acts, and that the transferee while the transferror was in such condition purchased the transferror's business, sufficiently shows that the transferror had a right to set aside the transaction on the ground of fraud.

9. FRAUDULENT CONVEYANCES—CREDITORS' SUIT—RIGHTS SUBJECTED TO CREDITORS' JUDGMENT.

Where a debtor was induced by the fraud of a buyer to sell his business to the buyer, the buyer became a constructive trustee of the property bought for the debtor, which constituted an equitable asset of the debtor subject to be reached by a judgment creditor in a suit in equity.

10. SAME—COMPLAINT—SUFFICIENCY.

A complaint in an action by a judgment creditor to set aside a sale made by the debtor on the ground that the sale was procured by the' fraud of the buyer need not offer to return the consideration paid by the buyer, especially where it prays for general relief which may be taken as a prayer for a recovery of the value of the property minus what was paid therefor by the buyer.

11. FRAUDULENT CONVEYANCES—SALES OF STOCK OF GOODS IN BULK.

A sale by a saloon keeper, holding a lease of a saloon for a year, with the right to renew the same from year to year so long as he bought beer from the landlord who owned the building and fixtures, of his business and stock of goods, is not a sale within Laws 1904, p. 1385, c. 569, declaring when a sale of a stock of merchandise in bulk shall be deemed fraudulent against creditors of the seller.

12. JUDGMENT—OVERRULING DEMURRER.

Where two demurrers were interposed to the complaint, the court should render but one decision and one judgment.

Ingraham, J., dissenting in part.

Appeal from Special Term.

Action by Benjamin Pritz and others against Patrick Jones and others. From two interlocutory judgments overruling the demurrer of defendants to the complaint, defendants appeal. Reversed in part and affirmed in part.

Argued before PATTERSON, INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Abraham Benedict, for appellants.

Hyman, Campbell & Eaton (Allan R. Campbell, of counsel), for respondents.

CLARKE, J. Appeals from two interlocutory judgments overruling the defendants' demurrers to the complaint.

The complaint alleged that plaintiffs recovered a judgment against defendant Belford for the sum of $1,119.37 on November 10, 1905, which was immediately docketed and execution issued thereon to the sheriff, who returned the same unsatisfied on November 23d; that on October 18, 1905, and for a long period prior thereto, defendant Belford had a saloon and café in the city of New York and was engaged in the liquor business; that Belford had a lease of said saloon from May 1, 1905, to May 1, 1906, and the right to renew said lease from year to year so long as he purchased beer from defendant Doelger; that the building and fixtures were owned by Doelger, who rented them to Belford; that Doelger, though the owner of the premises, required Belford to assume a mortgage of $10,000 thereon, which mortgage was wholly fictitious and without consideration; that throughout the year 1905 and prior to that time Belford had been a hard drinker, and that in July or August, 1905, he received a severe blow upon the head which seriously injured his brain and deranged

his mind, and, "by reason of the aforesaid injury and the aforesaid drinking, at no time since the day of said injury has said Belford been in fit condition to transact any business or to intelligently pass upon business propositions or to enter into contracts"; that on October 17, 1905, defendant Doelger notified Belford that he must sell out and vacate forthwith, and that Doelger refused to accept another tenant who had made Belford an offer of $3,500 for the place; that on the next day a stranger called upon Belford, and, having given the latter several drinks of whisky and rendered him totally unfit to discuss or consider any business propositions or to understand his acts, offered him $50 cash if he would sell his place, equipment, business, and good will for $1,950, and that Belford accepted the proposition and signed a contract embodying its terms; that thereupon the stranger notified Belford that he was acting as agent in the matter for defendants Jones and Moran, and that the transaction would be closed at the office of the defendant Doelger, where said Belford would receive $1,900 and sign a bill of sale; that continuously after signing this contract Belford steadily drank alcoholic beverages, and that at no time between the signing of the contract and October 21, 1905, was he able to comprehend the nature of his acts or the effect thereof, which fact was apparent and well known to every person with whom he came in contact; that on October 20, 1905, Belford called at the office of Doelger, and a representative of the latter then notified him that he owed said Doelger the sum of $1,197 and thereupon gave to Belford Doelger's check for $703, the difference between the amount of the alleged indebtedness and the price agreed upon in the contract; that Belford thereupon spent part of the proceeds of said check and paid certain loans with the balance; that on the night of October 20, 1905, in the presence of a representative of the defendant Doelger, defendants Jones and Moran took possession of said premises; that throughout these negotiations Belford was indebted to an amount exceeding $3,000 in addition to the claims of the defendant Doelger and the claims for borrowed money, paid with the proceeds of the check; that it was well known to all of the defendants that Belford was so indebted and that the transaction in question would leave him totally insolvent, and that Belford's creditors would be deprived thereby of all means of collecting their debts; that "the place, location, equipment, business, and good will of said Belford were at the time of said transaction worth at least the sum of $3,000, which was well known to defendants"; that the sale by Belford was a sale of Belford's stock of merchandise in bulk and otherwise than in the ordinary course of trade, and that said Belford, Jones, and Moran did not at least five days before said sale make a full inventory of said property transferred, nor did they make inquiry of Belford as to the names and places of residence of each of his creditors and obtain from him a written answer to said inquiries, nor did they notify each of Belford's creditors of the sale. The complaint prayed that the transaction in question be declared fraudulent and void as against plaintiffs; that said transaction be set aside and a receiver appointed; that the mortgage of $10,000 be canceled, or, in the alternative, that the transaction be declared fraudulent and void, and that defendants Doelger, Jones, and Moran

be compelled to pay to plaintiffs the value of the assets transferred and the profits of conducting the business from the time of the alleged sale, or, in case the relief so prayed for could not be granted then, that defendants Doelger, Jones, and Moran pay to plaintiffs as creditors of Belford the sum of $1,950.

1. Appellant Doelger contends that the complaint states no cause of action against him. This contention is well founded. The utmost that can be inferred from the complaint is that Doelger probably furnished to Jones and Moran upon some terms not disclosed the money with which the latter paid Belford for the transfer of the business. It is not alleged that Doelger has or ever had in his possession any of the property of Belford so transferred. Assuming for the moment that the complaint alleges Belford's incompetency, the mere fact that while incompetent he has paid to Doelger a debt owing to him is not a ground for setting aside the transaction. An incompetent may pay his just debts as well as one who is competent. I fail to see how plaintiff is entitled to cancellation of the $10,000 mortgage which it is alleged Doelger caused Belford to assume. This mortgage does not appear to be a lien upon anything which was ever owned by Belford or transferred by him. The complaint states that the building and fixtures were owned by Doelger, and that the mortgage was "upon said premises." There is nothing to show that Doelger is attempting to enforce any claim for $10,000 or any other sum as secured by said mortgage.

2. Appellants contend that the complaint states no cause of action against Jones and Moran for a transfer fraudulent as against creditors. Reduced to its ultimate analysis in this regard, the complaint alleges that Jones and Moran, knowing that Belford was insolvent, bought from him a business worth $3,000 for $1,950; the result being that beyond the purchase price Belford would have nothing with which to pay creditors to whom he owed $5,000. In order to set aside a transfer upon the ground that it was intended thereby to hinder and defraud creditors, it must appear that such intention existed upon the part both of the transferror and transferee. There is in this complaint no allegation of an intent to hinder, delay, or defraud creditors on the part of Belford, the transferror, nor that Jones and Moran, the transferees, purchased with intent to assist Belford in perpetrating a fraud upon his creditors. Indeed, it is not alleged that the plaintiffs were creditors at the time of the transaction complained of. While the allegation of fraudulent intent is not an absolute necessity where facts clearly showing such intent are set forth, plaintiff cannot ask a court to impute a fraudulent intent when he makes no assertion thereof, and the facts stated do not compel the inference. Fraud must be shown. It is usually deduced from facts which naturally and logically indicate its existence. The circumstances relied upon must be such as fairly and reasonably lead to the conclusion of a fraudulent intent, and fairly and reasonably exclude any other hypothesis. Shultz v. Hoagland, 85 N. Y. 464; Lopez v. Campbell, 163 N. Y. 340, 57 N. E. 501. Belford, although insolvent, had a right to sell his property, provided he did so in good faith and without fraudulent intent, although the effect of sale was to place the property beyond the reach of his creditors.

There is nothing to show the existence of a fraudulent intent as to his creditors. For a business only alleged to be worth $3,000, the value thereof, as must be apparent, mostly consisting of the good will, defendants paid $1,950, so far as appears, before Belford became indebted to the plaintiffs. Belford did not retain possession of the property after the transfer. No credit was extended upon an apparent possession which did not in reality exist. There was no colorable assignment under which Belford remained the real owner. It is affirmatively alleged that Jones and Moran took possession of the premises at once. It is also alleged that Belford applied almost all of the purchase price received by him to the payment of his debts. We think as between subsequent creditors and Jones and Moran, nothing is shown to warrant setting aside the transfer to them as fraudulent. There is nothing alleged which shows any intent on their part to hinder, defraud, or delay these plaintiffs. This action is not in the bankruptcy court, and no presumptions growing out of the provisions of the bankruptcy statute are to be indulged in.

3. Can the judgment creditors maintain the action to set aside the transfer, not upon the ground that it was fraudulent as against creditors, but as standing in the shoes of Belford to recover property wrongfully obtained from him? The first suggestion is that he was incompetent to make a contract. It seems to be established that the contracts of an insane person are voidable by the insane person himself, if he should thereafter recover his reason, or by a committee duly appointed of his estate, or, after his death, by his privies in blood or in estate. These judgment creditors claim such an interest in his estate as to entitle them to bring suit. Without passing upon that question about which there may be some doubt, it is sufficient to say that the allegations of the complaint are not sufficient to establish the insanity of Belford. It is nowhere alleged that Belford was insane at the time of the transaction in question, or that he was of unsound mind, or that he was wholly incompetent to comprehend the nature of the transaction. All that is alleged is that Belford was not in fit condition to transact any business, and was unable to understand his acts or the effect thereof. In Aldrich v. Bailey, 132 N. Y. 87, 30 N. E. 264, it was held that in an action to set aside a deed on the ground of the insanity of the grantor the complaint should allege that the grantor was "wholly and absolutely incompetent to comprehend and understand the nature of the transaction." It not being here alleged that he was insane or of unsound mind, or "wholly, absolutely and completely unable to understand or comprehend the nature of the transaction complained of," the complaint is insufficient.

4. There remains to be considered whether the complaint states a cause of action upon the ground of a fraud perpetrated upon Belford by procuring his intoxication, and so rendering him incompetent to understand the effect of what he was doing. The equitable relief, if any, to which a party is entitled who has been induced by fraud to make a conveyance, is a rescission of the contract. Upon this branch of the case, plaintiffs are to be considered as standing in the shoes of the defendant Belford, and the rule which would govern him, if he in his own name were seeking a rescission, must govern them. The

facts a'leged show that defendant Belford has a right of action in equity to set aside the transaction in question on the ground of fraud. This right is a property right. When the defendants Jones and Moran fraudulently obtained title to the saloon property, they became constructive trustees of this property for defendant Belford, and he has the same interest in this property as any other cestui que trust has in the property held by his trustee as such. This right is an equitable asset belonging to defendant, upon which his judgment creditors have a right to realize by proceeding in equity. That the equitable assets of the judgment debtor may be reached by the judgment creditor by an action in equity is settled law in this state. In First Nat. Bank v. Shuler, 153 N. Y. 167, 47 N. E. 264 (60 Am. St. Rep. 601), the court said:

"The rule is well settled in this state that the plaintiff in a creditor's action acquires, by the commencement of the suit, a lien upon the choses in action and equitable assets of the debtor, which entitle him, in the successful event of the action, to priority of payment thereout in preference to other creditors."

In Edmeston v. Lyde, 1 Paige, 637, the court said:

"The debts, choses in action, and other equitable rights of the defendants may be assigned or sold under the decree of this court so as to vest an equitable interest in the purchase, which will be protected both here and at law. * * * The principle being established that every species of property belonging to a debtor may be reached and applied to the satisfaction of his debts, the powers of this court are perfectly adequate to carry that principle into full effect."

The right in question is a chose in action which may be reached by a judgment creditor. In Hudson v. Plets, 11 Paige, 180, the court held that a right of action for trepass quære clausum could be reached by a judgment creditor, and said:

"The right to an action for an injury to the property of the judgment debtor, before the filing of the complainant's bill, whereby the property to which the debtor was entitled to resort for the payment of his debt is destroyed, or diminished in value, appears to be such a thing in action as may properly be reached and applied to the payment of the complainant's debts under a creditors' bill."

That case was cited and approved in Reilly v. Sicilian Co., 170 N. Y. 44, 62 N. E. 773 (57 L. R. A. 176, 88 Am. St. Rep. 636). It seems to me that that case is analogous to the one at bar. I can see no difference in principle between a legal and an equitable right of action for an injury to property, and, if one can be reached in equity by a judgment creditor, it seems to me that the other should.

But the complaint does not allege a precedent return of the consideration paid or an offer to return. There is no doubt but that plaintiff must submit to a deduction of the amount actually paid by defendants for the property in question from the proceeds of a sale thereof, or, if there be no sale, he must pay this amount to defendants before he can have the property; for he who asks equity must do equity, and it has always been the law that upon the rescission of a contract on account of fraud the vendor must return to the vendee the amount paid by the latter. Allerton v. Allerton, 50 N. Y. 670. Certain cases decided by the Court of Appeals, in distinguishing between an action

at law upon a rescission and one in equity for a rescission, have held that in the latter action "it is sufficient" for the plaintiff to offer in his complaint to restore to the defendant what he has received and that a tender of the same before suit brought is not necessary. Gould v. Cayuga Bank, 86 N. Y. 75; Berry v. A. C. Ins. Co., 132 N. Y. 55, 30 N. E. 254, 28 Am. St. Rep. 548; Vail v. Reynolds, 118 N. Y. 302, 23 N. E. 301.

An offer to return the consideration has been held unnecessary when the judgment prayed for allowed a deduction of the same from the amount of the recovery. Allerton v. Allerton, 50 N. Y. 670; Harris v. Equitable L. A. S., 64 N. Y. 196, 200. These cases would seem to indicate that, when the judgment prayed for does not allow a deduction of the consideration paid by the defendant, there must be an offer in the complaint to return the consideration, and without such an offer the complaint is insufficient. In the complaint before us there is no such offer; indeed one of the prayers is that defendants pay to plaintiff what they have already paid under the contract. Is this omission fatal?

Hay v. Hay, 13 Hun, 315, is a case directly in point. It was there held that in an action to set aside a contract on the ground of fraud it was not necessary to offer in the complaint to return the consideration received by plaintiff. The court said:

"A plaintiff who seeks equity must do equity. Therefore, if he asks the court to decree a rescission of his contract with the defendant for the fraud of the latter, the court will not grant him the relief unless he restores whatever he receives from the latter, and which rightfully belongs to him. That condition will be imposed whether there be an offer to restore in the complaint or not. It is, however, a condition of granting relief, not of instituting a suit. It is only where relief against an illegal contract is sought, and a statute requires that an offer to do equity must be made in the complaint, that such an offer is necessary. We think, therefore, that an offer to restore is not a necessary ingredient of the cause of action, and that a demurrer will not lie for the omission to insert such an offer in the complaint."

This case was followed in Winterson v. Hitchings, 9 Misc. Rep. 322, 30 N. Y. Supp. 260.

Kley v. Healy, 149 N. Y. 346, 44 N. E. 150, would seem to sustain the decision in Hay v. Hay, supra. It was there held that a judgment for plaintiff in an action to set aside a contract on the ground of fraud should be reversed for the reason that the plaintiff had not offered to restore the defendant to the position which he occupied at the time when the contract was made, "and the court in its decree has not provided for such restoration as a condition of awarding the relief demanded."

In Halpin v. Mutual Brewing Co., 20 App. Div. 590, 47 N. Y. Supp. 417, it was said:

"The proper course in equity in cases where the plaintiff seeks the rescission of a contract under which he has received property is to offer in the complaint to restore it to the defendant; but such an offer is not indispensable. The court in its decree may provide for restitution as a condition of granting the desired relief"—citing Kley v. Healy, supra.

Even though it is the rule that a complaint in an action of this kind should contain an offer to return the consideration received by plaintiff, it seems to me that this case can be brought within the exception

to that rule which makes such an offer unnecessary where the relief prayed for allows defendant to retain the amount of his consideration. This complaint contains a prayer for general relief, and it is a rule of equity pleading that, where plaintiff mistakes the relief to which he is entitled in his special prayer, "the court may yet afford him the relief to which he has a right, under the prayer of general relief, provided it is such relief as is agreeable to the cause made by the bill." Story, Equity Pleadings, p. 34; Thompson v. Heywood, 129 Mass. 401. This being the case, the prayer for general relief may be considered as a prayer for the value of the property in question minus what has already been paid by defendants. With such a prayer it has been held that an offer to return the consideration is unnecessary. Upon this view of the cause of action the complaint as against Jones and Moran is sufficient.

5. The complaint is also sought to be sustained as for a cause of action upon a sale in bulk of Belford's stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of his business without compliance with the provisions of the so-called "sale in bulk statute," being chapter 569, p. 1385, of the Laws of 1904. We do not think that the facts bring this transaction within the provisions of said section.

6. There were two decisions filed upon the two demurrers interposed, and, upon such decisions, two separate judgments were entered. We find no provisions of law authorizing such practice. There should have been but one decision and one judgment determining the questions raised by the several demurrers. Each demurrant could thereafter have appealed from so much of the judgment as affected him. The practice followed was anomalous, and should not be encouraged.

The judgment overruling the demurrer of Doelger should be reversed, with costs and disbursements to the appellant, with leave, however, to the respondents upon payment thereof within 20 days to make and serve an amended complaint. The judgment overruling the demurrer of Jones and Moran should be affirmed, with costs and disbursements to respondent.

PATTERSON, P. J., and HOUGHTON, J., concur. McLAUGHLIN, J., concurs in result.

INGRAHAM, J. I concur with Mr. Justice CLARKE that, for the reasons stated, no cause of action is alleged against the defendant Doelger, but I do not concur in his conclusion that a cause of action is stated as against the defendants Jones and Moran. I can find no allegation that the transfer of the business by Belford to Jones and Moran was made to hinder, delay, or defraud creditors, or that Jones and Moran purchased the property with that intent. The substance of the allegation is that Jones and Moran purchased the property of Belford for $1,950 and that that property, including the good will of the business, was worth $3,000. It appeared that Belford was indebted to the defendant Doelger for a considerable amount, alleged in the complaint to be $1,197; that Doelger owned the building and fixtures, which he rented to Belford from May 1, 1905, to May 1, 1906,

at an annual rental of $3,000, and Belford assumed a mortgage of $10,000 held by Doelger upon the premises; that on October 17, 1905, Doelger notified the defendant Belford that he must sell out and vacate forthwith, and refused to accept a purchaser of Belford's business and good will who made an offer of $3,500. Doelger was under no obligation to Belford's creditors to allow him to continue in possession of property for which, as appears from the complaint, he had not paid the rent due therefor, and had not paid Doelger for the supplies furnished to enable him to continue his business. It is quite evident that the purchaser of this business, including the good will, could not successfully conduct the business or continue in possession of the property without the consent of Doelger, and he was not required to give such consent to any person or persons suggested by the lessee. He accepted Jones and Moran as purchasers. They were, therefore, entitled to purchase the property at what they considered a fair price, and that they made an advantageous purchase is no reason, in the absence of fraud, why they should be deprived of it.

This complaint, however, is sought to be sustained upon the allegation that after Doelger had notified Belford that he must sell out and vacate forthwith, and on October 18, 1905, a stranger called upon Belford and gave him several drinks of whisky; that thereafter Belford became totally unfit to discuss or consider any business proposition and was unable to understand his acts or the effect thereof; that thereupon the stranger offered him $50 cash if he would sell his place, equipment, business, and good will for $1,950, and obtained from Belford his signature to a contract embodying such terms, paying said Belford $50; that thereupon said stranger notified Belford that he was acting as agent in the matter for Jones and Moran, and that the transaction would be closed at the office of the defendant Doe'ger, where Belford would receive $1,900 and sign a bill of sale. The complaint then alleges that continuously after the signing of such contract Belford steadily drank alcoholic beverages, and at no time between the signing of the contract and October 21st was he able to comprehend the nature of his acts or the effect thereof, which fact is apparent and well known to every person with whom he came in contact; that on October 20, 1905, Belford called at the office of Doelger where the bill of sale was signed, Doelger paid the amount due him from Belford, and the balance of the money was paid to Belford, who disposed of it by spending part of it and applying the balance to the payment of debts. On October 20th the representative of Jones and Moran took possession of the premises, and Belford vacated the same. Belford, so far as appears, never sought to disaffirm this transaction, but the plaintiffs, as his creditors, commenced this action in February, 1906, claiming to disaffirm this transfer, upon the ground that the same was fraudulent and void as against the plaintiffs as creditors of Belford, or in the alternative, to recover judgment against the defendants for the amount of Belford's indebtedness to plaintiff.

It seems to be conceded that the court would be required to repay to Jones and Moran the amount that they paid to Belford before the transfer could be set aside. There is no allegation that Jones and Moran received any money or property out of the transaction, but

simply that they obtained an assignment of this business, which included the good will, lease, and fixtures for a sum of money which was less than its real value.   There is nothing to justify a personal judgment against any of the defendants for any sum of money, but it is claimed that the plaintiffs were entitled to have the sale set aside and a receiver appointed to take possession of the assigned property for the benefit of Belford's creditors.   Belford makes no comp'aint, but his creditors seek to enforce a right that he had to set aside the transfer upon the ground that he was intoxicated and did not know what he was about.   I do not see how it can be said that Jones and Moran were responsible for his intoxication, and the case must stand or fall upon whether these allegations are sufficient to show that Belford was incompetent by reason of temporary insanity caused by the excessive use of alcohol to make a valid transfer of his business. Clearly, before such a transfer could be set aside, the plaintiffs would be compelled to repay the amount that Jones and Moran actua'ly paid, and to sustain such an action, as I understand the rule, it is necessary to allege either a tender of the amount or a willingness to repay as a condition of the equitable relief asked for.   It is held in the prevailing opinion, however, that a complaint is not demurrable because it fails to make an offer to return the consideration received by the assignee. The case of Hay v. Hay, 13 Hun, 315, is cited as an authority for that proposition.   The complaint in that case alleged:   That while one James Hay, for whom the plaintiff was the committee, was insane and under the duress and restraint of the defendant, the latter extorted from him an agreement in writing, and on the same day, with fraudulent intent and unlawful coercion, induced him to execute a will, wherein defendant was named sole legatee and executor.   Subsequently Hay was found a lunatic, and defendant was appointed his committee.   That the defendant subsequently, by false representations, induced the plaintiff to enter into an agreement with him, by which plaintiff waived all objections to the probate of the will, which was admitted to probate, and defendant qua'ified as executor and continued to act as such. Subsequently the defendant obtained by fraud a general release from the plaintiff, and the complaint demanded that these four instruments be adjudged to be void.   There was here no allegation, so far as appears, that the plaintiff had ever received anything from the defendant or that there was anything that the plaintiff should be compelled to restore in order to entitle him to maintain the action.   No authorities are cited in the opinion upon the necessity of an offer to restore money that has been actually received by a lunatic or incompetent person for the transfer of property, and from the report the question does not seem to have been presented.

The case of Kley v. Healy, 149 N. Y. 346, 44 N. E. 150 is also cited as sustaining this contention; but I think it is an authority for the defendants.   That was an action to set aside certain instruments executed by the defendant on the ground that they had been obtained by fraud. Judgment was entered at Special Term in favor of the plaintiff, which judgment was reversed by the General Term and the Court of Common Pleas, and from the order of reversal the plaintiff appealed to the Court of Appeals.   The reversal of that judgment was there sustained upon

the ground that "the plaintiff has not offered to restore the defendant to the position which he occupied at the time when the agreement for settlement was made between them, and the court·in its decree has not provided for such restoration as a condition of awarding the relief demanded." The reason given is in the conjunctive and not in the disjunctive, and it would appear to follow from what was said that an allegation in the complaint of an offer to restore was necessary to sustain any cause of action. There was a dissent in that case, but the rule stated in the prevailing opinion seems to have been conceded; the only dissent being upon the principle that the point should have been made upon the trial and not left to be first considered on appeal. That case was before the Court of Appeals upon a former appeal (Kley v. Healy, 127 N. Y. 555, 28 N. E. 593), where the complaint was dismissed upon the opening. That case was reversed upon the principle that:

"One who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain, either by virtue of the contract sought to be set aside or of an original liability. * * * While the sum retained should be taken into account in the award of relief, as offer to restore it is not a condition precedent to the bringing of an action to set aside the fraudulent release. * * * If her action failed, she was entitled to the sum received by virtue of the transaction itself. If she succeeded, the sum was less than she was concededly entitled to by the original judgment. In any event, therefore, she had only that which, without dispute, belonged to her, and a restoration, or the offer thereof, was unnecessary prior to the commencement of the action, for such conditions as might be essential to the protection of the defendant could be inserted in the judgment ultimately rendered."

In Gould v. Cayuga Co. Nat. Bank. et al., 86 N. Y. 75, the conditions under which a party may sue in case of transfer or agreement obtained by fraud is stated as follows:

"One situated like the plaintiff can rescind by tendering or restoring what he has received, and then commence his action. He may keep what he has received and sue to recover damages for the fraud; or he may commence an action in equity to rescind and for equitable relief, offering in his complaint to restore in case he is not entitled to retain what he has received."

From these cases the rule in relation to these actions is settled. When a plaintiff sues at law, he is bound to tender the amount that he has received before maintaining the action based upon a rescission of the conveyance thus obtained; or he may sue generally to recover damages for the fraud. He may also apply to a court of equity to rescind. In equity where it appears that, if he obtained the relief for which he asked, he would not be entitled to retain what he received, he must then, in his complaint, offer to restore the amount received as a condition of equitable relief. In this case I think it clear that, if Belford had commenced this action to rescind and repossess himself of the property assigned to Jones and Moran, he would have been compelled to repay to Jones and Moran the money that had been paid to him and which had been applied by him to the payment of his debts, or applied by him for his own purposes. It certainly would be inequitable for Belford or his creditors to obtain possession of the property for which Jones and Moran had paid $1,950 and not repay to them

the amount that they had paid and which had been applied by Belford to his own use. Plaintiffs, as his creditors, can certainly stand in no better position than he stood, and can obtain a rescission only upon the terms upon which he could insist upon such rescission. An allegation that plaintiff offered to restore is material; for, although the plaintiffs claim that this property, including the good will of the business, was worth $3,000, it is alleged that Jones and Moran actually paid $1,950 for it. It does not appear that Doelger was bound to recognize any assignee of Jones and Moran as a tenant or allow them to continue in possession of the leased property. However much the plaintiffs might desire to recover the amount of Belford's indebtedness to them, there is nothing to show that they would be willing under these conditions to repay to Jones and Moran the amount that they had actually paid for the business. At any rate, Jones and Moran were entitled to receive that amount before the sale could be rescinded, and these plaintiffs could not maintain an action for the rescission of the sale without tendering either the amount that Jones and Moran had paid for the business, or offering in the complaint to make restitution.

For these reasons, I think the demurrer should have been sustained.