Morgan Munitions Supply Company, Inc., Appellant, Respondent, v. The Studebaker Corporation of America, Respondent, Appellant.

First Department, December 21, 1917.

Pleading — action to recover commissions for procuring war con-tracts — answer — false representations of plaintiff's assignor — falsely impersonating another — contract procured by crime unenforcible — rescission of contract on discovery of fraud — when offer of restoration not essential — allegation that services rendered were valueless.

Where the plaintiff, as assignee of a person purporting to be named " Hill G. Morgan," sues to recover commissions alleged to be due to the assignor for procuring contracts for the defendant to manufacture supplies for a foreign government engaged in the present war, the complaint pur-

porting to be verified by " Hill G. Morgan," it is a good defense to allege in substance that Hill G. Morgan is a distinguished officer in the active service of the foreign government and administrative head of a war office for supplies and that as a matter of fact the plaintiff's assignor is the brother of said Hill G. Morgan, but falsely represented himself to be said person and stated that fact to the defendant in writing, and falsely represented that he was in the service of the foreign government in an honorary advisory· capacity and was on such terms of intimacy with officers of the foreign army that by reason of his knowledge and connections he could be of great assistance to the defendant in procuring for it a contract for supplies, and that all said statements of the plaintiff's assignor were false and untrue, as the defendant has since learned, and that it was in reliance on said false representations that the contract for commissions, if any, was made.

Such defense sets out facts which bring the agreement for commissions within the inhibitions of section 939 of the Penal Law relating to the obtaining of employment by false or forged letter or certificate of recommendation or by any false statement in writing as to name, residence, previous employment or qualification. Hence the contract for commissions procured by the commission of said crime is unenforcible, and this whether executory or executed.

It is also a good defense to said action to allege in substance the facts aforesaid and in addition that the services rendered by the plaintiff's assignor were of no value and that the defendant never had knowledge or information sufficient to form a belief as to the falsity of the representations made by the plaintiff's assignor until after the commencement of the action, and that the defendant promptly and without delay interposes the defense as and for a rescission of any contract of employment made between it and the plaintiff's assignor.

While ordinarily a defendant when rescinding a contract would be compelled to allege that it restored or offered to restore to the plaintiff all benefits received under the contract, said offer of restoration is not essential under the facts aforesaid, for the defendant alleges it has received nothing of value from the plaintiff's assignor in that his services were valueless.

Laughlin, J., dissented, with opinion.

Cross-appeals by the plaintiff, Morgan Munitions Supply Company, Inc., and by the defendant, The Studebaker Corporation of America, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of June, 1917.

Plaintiff appeals from so much of said order as overrules its demurrer to the first defense in the supplemental answer. Defendant appeals from so much of said order as sustains a demurrer to the second defense.

*Merle I. St. John [George Gordon Battle* with him on the brief], for the plaintiff.

*Eugene D. Hawkins [E. J. Dimock* with him on the brief], for the defendant.

Dowling, J.:

This action is brought by plaintiff as the assignee of one Hill G. Morgan to recover the sum of $825,000 claimed to be due him under the terms of a contract between him and the defendant. The complaint sets forth that in September, 1914, Hill G. Morgan was engaged in business as a broker and selling agent, particularly as representative of various persons, firms and corporations, for the purpose of obtaining on their behalf contracts from the governments now engaged in war, to purchase from his clients munitions of war and other goods manufactured or sold by the latter. It is then alleged that in September, 1914, defendant entered into an agreement with said Hill G. Morgan whereby it authorized and requested him to submit to the belligerent governments or their accredited representatives samples of the merchandise and munitions of war manufactured or sold by defendant, and further authorized and requested him to negotiate sales or obtain orders for the purchase of such goods by such governments, and that defendant promised to pay said Morgan as compensation for his services in introducing said goods and negotiating for such contracts or sales, a commission of five per cent upon the purchase price of all goods sold by defendant to any of said belligerent governments as a result of said Morgan's efforts, or through him, or on sales to which his efforts in any way contributed. The plaintiff then alleges that defendant, about November 15, 1914, obtained from the government of Great Britain large contracts for the purchase of munitions of war from defendant, aggregating $16,500,000. It is then averred that said contracts were obtained, and the sales made, as the result of the efforts of said Morgan in introducing the goods and samples of the defendant to the representatives of the said government, and in negotiating for said sales, and that Morgan was the procuring cause of the sales and his efforts in some way contributed towards such sales being made by defendant; by reason whereof said Morgan became entitled

to his commissions of $825,000, no part whereof has been paid.

The supplemental answer contains two defenses, each setting forth the same state of facts. Summarized, defendant's allegations of fact are as follows: That Hill Godfrey Morgan is a retired colonel of the English army, holder of the honorary orders of Commander of the Bath and Distinguished Service Order, and had served with Lord Kitchener in Egypt and South Africa and been Director of Supplies there; that he had re-entered active service in the British army and now is a colonel thereof and the administrative member of the British War Office for the Supply of Forage to the Troops Over Sea and at Home. In August and September, 1914, plaintiff's assignor, referred to in the complaint as Hill G. Morgan and who is in fact Francis Curtis Morgan, a brother of the said Hill G. Morgan, represented and stated in writing to the defendant that he was the said Hill G. Morgan and specifically set forth that he was a retired colonel of the English army; the holder of the orders of Commander of the Bath and Distinguished Service Order; late Director of Supplies for South Africa; and connected with the British War Office in an honorary advisory capacity, and that his experience and services as an officer in the English army and as Director of Supplies for South Africa had given him a thorough knowledge of the requirements of the English army as to saddles, harness and wagons; that he was on terms of intimacy with officers of the highest rank in the English army, and that by reason of his knowledge and connections he could be of great assistance to defendant in securing the sale of saddles, harness and wagons to the British Government and the Dominion of Canada, for use in time of war. Each of these statements and representations as thus made in writing is alleged to have been false and untrue, and that Francis Curtis Morgan, posing as his brother Hill G. Morgan, in fact possessed none of the qualifications, and had been invested with none of the commands or dignities, and had none of the acquaintanceships or power, which he represented he had. It is then set forth that the statements and representations in question were made by Francis Curtis Morgan to obtain employment from defendant which, believing them and relying thereupon, employed

Francis Curtis Morgan in the name of Hill G. Morgan; and that if the contract in question ever was made, it was procured by Francis Curtis Morgan's misrepresentations and by his assumption of his brother's personality. It is then alleged that defendant did not learn of the falsity of these representations until after the commencement of this action. It may be noted in passing that the complaint herein purports to be verified by Hill G. Morgan, as president of the plaintiff corporation.

The first defense raises the question of the legality of the contract in question, for it contains all the allegations necessary to bring the case within the inhibitions of section 939 of the Penal Law, reading as follows: " A person who obtains employment or appointment to any office or place of trust by color or aid of any false or forged letter or certificate of recommendation, or of any false statement in writing, as to his name, residence, previous employment or qualification; * * * is guilty of a misdemeanor."

The allegations of the first defense in the answer, if proven, would establish that Francis Curtis Morgan had obtained employment from the defendant as its selling agent or broker under false representations in writing as to his name, previous employment and qualifications. This would constitute a crime and a contract procured by the commission of a crime is unenforcible even if executed. It was held by this court in *Sirkin* v. *Fourteenth Street Store* (124 App. Div. 384) that " A contract, however, made in violation of a penal statute, although not expressly prohibited or declared to be void, is prohibited, void and unenforcible, whether executory or executed. (*Griffith* v. *Wells*, 3 Den. 226; *Barton* v. *Port Jackson & U. F. P. R. Co.*, 17 Barb. 397.) A contract to do an illegal act or to aid another in violating the law is likewise void and unenforcible, whether executory or executed. (*Goodrich* v. *Houghton*, 134 N. Y. 115; *Materne* v. *Horwitz*, 101 id. 469; *Brinkman* v. *Eisler*, 26 N. Y. St. Repr. 94; affd., 40 id. 865; *Hull* v. *Ruggles*, 56 N. Y. 424.)" We are of the opinion, therefore, that in so far as the plaintiff's appeal is concerned the order appealed from is right and should be affirmed.

By its second defense the defendant, after reiterating the facts, hereinbefore epitomized, proceeded to set forth:

" 18. That any services rendered by Francis Curtis Morgan at the request of the defendant were of a reasonable value less than the amount demanded in the complaint, to wit, of no value.

" 19. That defendant never had any knowledge or information sufficient to form a belief as to the falsity of such statements and representations made to it by said Francis Curtis Morgan until about the 11th day of December, 1916, and subsequent to the commencement of this action; that defendant has acted promptly and without undue delay in interposing this defense as and for a rescission of any contract of employment made between it and said Francis Curtis Morgan."

This defense, therefore, amounts to a claim of a rescission by the defendant of the contract in question, based upon the fraud of the plaintiff's assignor. Viewing the second defense by itself we believe it presents a complete statement of facts which, if proven, would have justified the defendant in rescinding the contract in question upon the ground of Francis Curtis Morgan's fraud. The defendant is not asking for a judgment of the court rescinding the contract in question, but is setting forth the facts upon which, as soon as it discovered their falsity, it acted and declared the contract rescinded. In order to justify the defendant in rescinding, it would be compelled to allege that it restored or offered to restore to the plaintiff all benefits which the defendant had received under the contract in question. In other words, if defendant had profited in any way by plaintiff's assistance in obtaining the contract which it sought to annul, it would not be equitable or just that it should keep what it had gained thereby and simply seek to prevent the other party from obtaining any benefit therefrom. But this rule has been modified to some extent. Thus in *Kley* v. *Healy* (127 N. Y. 555) it was held that one who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside or of the original liability. (See, also, *Pritz* v. *Jones*, 117 App. Div. 643.) So, also, it has been held that where it does not appear that anything of value has passed to the party

seeking to rescind there is nothing to be returned o the other party. (*Wolf* v. *National City Bank*, 170 App. Div. 565.) In that case the subject of the rescission was a credit given by a bank upon the discount of a note obtained by fraud, which note had not yet matured and was never paid. In the case at bar, viewing simply the second defense as a plea of rescission, the defendant, if it had received anything of value, would have been bound to restore or offer to restore what it had received—in this case the value of Morgan's services in obtaining the contract—before it could lawfully rescind the contract between Morgan and itself. But it meets this situation by alleging facts which, if proven, would show that it was under no obligation to restore, or offer to restore, before it rescinded as it had received nothing of value from Morgan, in that his services were valueless. That is, it alleges that any services rendered by Morgan were of no value whatever, and if it can establish that fact, of course it was within its rights in rescinding as soon as it discovered the fraud committed upon it. I am, therefore, of opinion that the second defense upon its face is good and that the demurrer thereto should have been overruled.

The order appealed from will, therefore, be affirmed in so far as the plaintiff appeals therefrom; and upon the defendant's appeal the order in so far as it sustains the demurrer to the second defense will be reversed, and the said demurrer overruled, with ten dollars costs. Defendant is further given ten dollars costs and disbursements upon this appeal.

CLARKE, P. J., SCOTT and SMITH, JJ., concurred; LAUGHLIN, J., dissented.

LAUGHLIN, J. (dissenting):

I agree with Mr. Justice DOWLING with respect to his construction of the two defenses to which the plaintiff demurred on the ground that the facts therein stated were insufficient in law. There is in neither of the defenses a denial of any of the allegations of the complaint, and it appears by the second defense that the defendant did not acquire knowledge of the falsity of the statements alleged to have been made by the plaintiff's assignor in obtaining the employment until

*after* the commencement of the action from which it necessarily follows that its alleged rescission was *after* the complete rendition of the services under the employment and after the defendant .had obtained the full benefit of the contracts with the English government, . for it is alleged in the complaint that prior to the commencement of the action the plaintiff's assignor, acting under his contract with the defendant, had obtained for it two contracts, one for 30,000 sets of artillery harness with 90,000 saddles, at $500 per set, and another for 15,000 double sets of artillery harness, at $100 per set, which it had executed and for which it had received the total contract price of $16,500,000 upon which, it is claimed, the plaintiff's assignor became entitled under the contract to a commission of five per cent, or $825,000. .

The rule is well settled that on a demurrer to a defense containing no denial of any of the allegations of the complaint all of the allegations of fact contained in the complaint are to be deemed admitted. (*Douglas* v. *Coonley*, 156 N. Y. 521, 528; *Empire Trust Co.* v. *Magee*, 117 App. Div. 34; *Mendelson* v. *Margulies*, 157 id. 666, 670; *Ivy Courts Realty Co.* v. *Morton*, 73 id. 335, 338; *De Voe* v. *Lutz*, 133 id. 356, 361; *Smith* v. *Coe*, 170 N. Y. 162, 167; *Pullen* v. *Seaboard Trading Co.*, 165 App. Div. 117, 119; *Fleischmann* v. *Stern*, 90 N. Y. 110.) It follows, therefore, that it must be assumed that this contract was fully performed and thereby became fully executed before there was any attempt by the defendant to rescind it. The allegations of fraudulent representations alleged to have been made by the plaintiff's assignor concerning his identity in inducing his employment by the defendant are no defense to his action to recover on the executed contract, and although, while executory, the contract was voidable and the defendant might have elected to declare it void for fraud, when it became fully executed the defendant's only right of redress was to interpose a counterclaim for damages, if any, which it has not done. (*Phelps* v. *McQuade*, 220 N. Y. 232; *People* v. *Republic Savings & Loan Assn.*, 97 App. Div. 31; *Vandegrift* v. *Bertron*, 83 id. 548; *Kelly Asphalt Block Co.* v. *Barber Asphalt Paving Co.*, 136 id. 22, 26; *Sinnott* v. *German-American Bank*, 164 N. Y. 386; 1 Bigelow Fraud, 540, 541; 2 Pom. Eq. Juris. [3d ed.] § 897ⁿ.)

We come now to the question as to whether the contract of employment was absolutely void as against public policy on the ground that plaintiff's assignor obtained the employment by making a false statement in writing with respect to his name and previous employment or qualifications in violation of the provisions of section 939 of the Penal Law which, so far as material to the question presented, are as follows: · "A person who obtains employment or appointment to any office or place of trust by color or aid of any false or forged letter or certificate of recommendation, or of any false statement in writing, as to his name, residence, previous employment or qualification; * * * is guilty of a misdemeanor."

Assuming, as counsel have on the presentation of the appeal, that the plaintiff's assignor violated these statutory provisions in obtaining employment from the defendant, still in my opinion that does not prevent a recovery on the contract. The statute does not declare that a contract so obtained is void nor does it prohibit a recovery thereon. It merely declares a person so obtaining employment to be guilty of a misdemeanor, and of course, as already observed, the contract of employment while executory could have been rescinded either on the ground of fraud or because it was obtained in violation of the statute; but here there has been no rescission and the question is whether the party who has received the full fruits of the employment shall be permitted to retain the entire contract price at which it was willing to sell the goods, which included its own profits and the commission of five per cent which it agreed to pay to the plaintiff's assignor for procuring the contract. Here the employment of the plaintiff's assignor by the defendant to perform services for which a recovery is sought did not contravene any public policy or statute of this State. It was perfectly legal for the defendant to employ the plaintiff's assignor to obtain these contracts. There was no illegality in the contracts for the sale of defendant's goods which the plaintiff's assignor negotiated and, therefore, our decision in *Sirkin* v. *Fourteenth Street Store* (124 App. Div. 384) is not in point, for there we deemed the contract, by which the agent of the purchaser was to receive a rebate on the price paid by his employer for the goods, to be precisely the same ·

in effect as if it had been expressly embraced in the contract of sale and since the contract of sale, upon which the action was brought to recover the purchase price of the goods, involved the bribery of the purchaser's agent, we held that it was invalid and unenforcible as contravening the public policy of the State as evidenced by the statute. We fully recognized in deciding that case that we were making an extreme decision, but we deemed it necessary to enforce the public policy of the State to protect employers against fraud and dishonesty on the part of their employees and to insure honesty in business dealings, and, therefore, our decision is not controlling on the case here presented where there is no claim that the defendant has been in any manner damaged or in the least prejudiced by the false representation in writing with respect to the identity of the plaintiff's assignor by which it was led to employ him. This view is, I think, supported by the decision in *Ballin* v. *Fourteenth Street Store* (195 N. Y. 580) in affirming 123 Appellate Division, 582, which allowed a recovery by the vendor where the vendee · was *aware* of the agreement between his agent and the vendor for a commission on the sale which was in violation of the provisions of section 384r of the Penal Code, being the same statutory provisions on which our decision in *Sirkin* v. *Fourteenth Street Store* (*supra*) was predicated. No opinion was written by the Court of Appeals in that case, but the decision of the Appellate Division was placed on the ground that the employer had not been defrauded, inasmuch as he was aware of the fact that the agent was to receive the commission and with that knowledge authorized the purchase. In *Schank* v. *Schuchman* (212 N. Y. 352), affirming *Hearn* v. *Schuchman* (157 App. Div. 926), it was held that a suit in equity for the rescission of contracts under which the plaintiff purchased wagons of and had wagons repaired by defendant and for the recovery of the amount paid would not lie, on the ground that the defendant, in violation of section 439 of the Penal Law, had bribed the plaintiff's employees who made the purchases and had the repair work done, inasmuch as the plaintiff could not make restoration to the defendant and that there could be no recovery in the absence of an allegation and proof of some disparity between the price of the

wagons and repair work and the price paid and then only in an action at law, which was the rule of law declared by this court applicable to the facts in a former action at law. (*Hearn* v. *Schuchman*, 150 App. Div. 476.) In *Schank* v. *Schuchman* (*supra*) the Court of Appeals also held that an action for the rescission of an executed contract will not lie, unless a decree of rescission is essential to the protection of the party demanding it.

This is not wholly a pioneer case. On principle, I think, it is governed by the decision in *Kenny* v. *Union Railway Company* (166 App. Div. 497), wherein it was held that so long as the master permitted services to be performed under the contract of employment obtained by the employee, as here, in violation of the provisions of said section 939 of the Penal Law, the relation of master and servant existed with all of the rights and duties flowing therefrom, and that a recovery could be had for the death of the employee caused by the negligence of his employer, and in that case it was expressly decided that the violation of the statute did not render the contract of employment void so that decedent was a mere licensee, but only voidable at the election of the employer. The same principle was decided in *Hart* v. *N. Y. C. & H. R. R. Co.* (205 N. Y. 317), wherein it was held that a contract of employment obtained by false representations was voidable but not void, and that a recovery could be had against the employer for negligently causing the death of an employee although the employment was obtained on a material false representation in writing made by the employee, who was an infant, with respect to his age, which was in violation of like statutory provisions existing at that time, for they have been in force in the same phraseology since the amendment of section 570 of the Penal Code by section 1 of chapter 654 of the Laws of 1886. I think it necessarily follows from the two decisions last cited that until such time as the employer rescinded the contract of employment a recovery could be had thereunder. That must follow if the contracts were merely voidable and not void. The only theory upon which a recovery on an executed contract can be prevented is that it was void *ab initio*. On the facts alleged no injustice has been done the defend-

ant and so far as appears no discretion even was vested in the plaintiff's assignor.  If he was given a selling price by the defendant and obtained the contracts therefor without the exercise of any discretion on his part, the defendant could not have been prejudiced.  He procured what the defendant desired and what it employed him to obtain.  Doubtless he thought that the defendant would not be impressed with his ability to obtain the contracts if he disclosed his identity, but, having confidence that he could obtain the contracts, in order to obtain the employment and be afforded an opportunity so to do he, in violation of the statute, impersonated his brother.  It is a case quite aptly described as the commission of a crime in the approach to a contract rather than in the contract itself or in the performance thereof.  (See *Cody* v. *Dempsey*, 86 App. Div. 335; *Haynes* v. *Abramson*, 97 N. Y. Supp. 371; *Beilin* v. *Wein*, 51 Misc. Rep. 595; *Hough* v. *Baldwin*, 50 id. 546.)

In the circumstances I think the court may permit a recovery without condoning the acts of the plaintiff's assignor in violation of the statute for the reason that the defendant was not and, so far as appears, could not have been injured thereby.

I am of opinion that a recovery may be had on the contract and, therefore, I do not deem it necessary to consider the further question, which would present a novel and interesting point, as to whether if there could be no recovery on the contract a recovery might be had herein on a *quantum meruit*.

I, therefore, vote to reverse the order in so far as it overrules the demurrer to the first defense and to affirm it in sustaining the demurrer to the second defense.

Order, so far as appealed from by plaintiff, affirmed; so far as appealed from by defendant reversed, with ten dollars costs and disbursements, and demurrer to second defense overruled, with ten dollars costs to defendant, with leave to plaintiff to withdraw demurrers on payment of costs.