ANNA C. KLEY, Appellant, *v.* JOHN W. HEALY, Impleaded, etc., Respondent.

1. FALSE REPRESENTATIONS — VARIANCE BETWEEN ALLEGATION AND FINDING. *It seems*, that when a complaint alleges that the defendant falsely represented that he was interested as a co-partner in a certain firm, a finding in the alternative that the defendant represented that he was interested, or was about to become interested, as a co-partner in the firm, is not in accordance with the allegation of the complaint.

2. VACATION OF SATISFACTION OF JUDGMENT — RESTORATION OF PARTIES TO ANTECEDENT SITUATION — RIGHT OF DEFENDANT TO CONTEST THE ORIGINAL CLAIM. When, after the defendant in a judgment

obtained by default has secured from the court the right to contest the plaintiff's claim on serving an answer, the plaintiff stipulates to satisfy the judgment, to discontinue the action and to release the defendant generally, upon condition of the defendant's paying attorney's and sheriff's fees, and the defendant complies and the plaintiff executes the release and satisfaction, those instruments should not be vacated, at the suit of the judgment plaintiff, on the ground of fraud in their procurement, without preserving to the defendant his right to contest the original claim; but if the instruments are decreed to be canceled both parties should be restored to the situation in which they were when the stipulation was made, instead of the enforcement of the original judgment being decreed.

*Kley* v. *Healy*, 9 Misc. Rep. 93, affirmed.

(Argued April 14, 1896; decided May 26, 1896.)

APPEAL from order of the General Term of the Court of Common Pleas for the city and county of New York, made and entered June 11, 1894, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granted a new trial.

This action was brought in equity to cancel the satisfaction of a judgment, a general release and the countermand of an execution, executed by the plaintiff; upon the ground that such instruments were obtained from her by fraudulent representations. These fraudulent representations were alleged in the complaint to have been as follows: " That he (defendant) was interested as a co-partner in the mercantile house or firm of E. S. Higgins & Co., carrying on business in the city of New York, and that if the recovery of said judgment became known to his said co-partners that they would dissolve their co-partnership with him, eject him from said business and entail upon him financial ruin; that his said interest in said co-partnership was a lucrative one and would enable him soon to pay said judgment, which he then promised to do if she would only permit him to retain said interest by releasing said judgment." The answer denied these, among the other allegations of the complaint. The finding of the trial court was as follows: " That he (the defendant) was interested, or was about to become interested as a co-partner, in the mercantile house or firm of E. S. Higgins & Co., carrying on business in

the city and county of New York, and that if the recovery of said judgment became known to his said co-partners, they would dissolve their co-partnership with him, or would not allow him to become a partner, and would eject him from said business, both as a partner and as a clerk, and would entail upon him financial ruin. That his said interest in said co-partnership was, or was to be, a lucrative one, and would enable him to soon pay said judgment." The decree rendered by the trial court, in conformity with its conclusions of law, adjudged that the instruments mentioned should be vacated and set aside; that the plaintiff should recover of the defendant the judgment which had been satisfied and that the said judgment should be a lien upon the defendant's real estate. On appeal to the General Term of the Common Pleas Court of the city of New York, the judgment of the trial court was wholly reversed and a new trial directed.

Some further facts, with respect to the relations between the plaintiff and the defendant at the time when these instruments so vacated by the decree appealed from were executed by the plaintiff, may be briefly stated. In November, 1874, the plaintiff had entered a judgment against the defendant for the sum of $3,840.64, in an action to recover damages for the wrongful conversion of personal property. The summons therein was dated and served in March, 1863, as appears from the judgment roll, and the judgment was had as the result of an inquisition ordered before a sheriff's jury. Execution was issued upon the day of the entry of the judgment and was levied upon certain real property of the defendant, which was, thereupon, advertised for sale by the sheriff. Thereafter, the defendant, upon his affidavit denying that any summons had ever been served upon him in that action and alleging that the allegations in the complaint were false and that the plaintiff was in fact indebted to the defendant, moved to set aside the judgment so recovered against him, upon the ground of fraud and irregularity. The motion was opposed by the plaintiff, upon affidavits contradicting the defendant's statements, and upon the hearing an order was made which denied the motion,

but allowed the defendant, upon his paying a certain sum by
way of costs and consenting to a reference of the action, to
serve an answer to the complaint within ten days and that,
meanwhile, the judgment should stand as security for any
recovery by the plaintiff against the defendant. Negotiations
immediately took place between the plaintiff and the defend-
ant for a settlement and, as the result, a stipulation was
entered into between the parties; by which it was agreed,.
on the part of the plaintiff, that the action should be settled
and discontinued, that the judgment entered therein should
be satisfied of record and that the execution thereon should
be countermanded, upon the defendant's paying to the plain-
tiff's attorney and counsel costs to the amount of $250,
within a certain specified time, and the sheriff's fees upon
the execution; which he agreed to do. This agreement
between the parties was fully carried out within the time
specified and the plaintiff satisfied the judgment, counter-
manded the execution and delivered to the plaintiff a general
release of all claims. Some time after this agreement was
made between the parties and carried out by them, the present
action was commenced. From the order of reversal by the
General Term of the judgment recovered by the plaintiff in
the trial court, she has appealed to this court; giving the
usual stipulation for judgment absolute in case of affirmance.

*Isaac H. Maynard* and *Hector M. Hitchings* for appellant.
There was no material variance between the pleadings and
the proofs, and there is no available exception in the record
upon which the respondent can rely to raise the question of
variance upon appeal. (Code Civ. Proc. §§ 539, 540, 541, 721,
722, 723; *Hall* v. *Gould,* 13 N. Y. 127; *Place* v. *Minster,*
65 N. Y. 89; *Bryan* v. *Baldwin,* 52 N. Y. 232; *Lyons* v.
*Miller,* 10 Misc. Rep. 653; *Laufer* v. *B. F. Co.,* 84 Hun,
311; *Walbridge* v. *O. Nat. Bank,* 59 N. Y. 642; *Hauck* v.
*Craighead,* 4 Hun, 561; *Conhocton Co.* v. *B., N. Y. & E. R.
R. Co.,* 3 Hun, 523; *Dunn* v. *Durant,* 9 Daly, 389; *Brock* v.
*Knower,* 37 Hun, 609; *T. Nat. Bank* v. *Elliott,* 42 Hun, 121;

*Barton* v. *McChesney*, 48 Hun, 443.) The motions to dismiss the complaint upon the complaint and opening and again at the close of plaintiff's case were properly denied. (*State of Michigan* v. *Phœnix Bank*, 33 N. Y. 25 ; Story's Eq. Juris. §§ 191, 192 ; *Dobson* v. *Pearce*, 12 N. Y. 156 ; *People ex rel.* v. *Eddy*, 57 Barb. 594, 603 ; *Baker* v. *Spencer*, 47 N. Y. 562 ; *Brown* v. *Post*, 1 Hun, 303 ; *Ross* v. *Ross*, 6 Hun, 83, 84 ; *Hardt* v. *Schulting*, 85 N. Y. 624 ; *I. & T. Bank* v. *Everett*, 21 N. Y. S. R. 98, 102 ; *Fountain* v. *Pettee*, 38 N. Y. 184 ; *Shaw* v. *Smith*, 3 Keyes, 316.)

*Matthew Hale, Alpheus T. Bulkeley* and *Christopher Fine* for respondent. Plaintiff entirely failed to establish the alleged cause of action set up in the complaint. (*Kountze* v. *Kennedy*, 147 N. Y. 124 ; *De Milt* v. *Hill*, 89 Hun, 56 ; *Lexow* v. *Julian*, 21 Hun, 577 ; *Vosburgh* v. *Teator*, 32 N. Y. 561 ; *Steele* v. *White*, 2 Paige, 478 ; *Scott* v. *Warner*, 2 Lans. 49, 52 ; *Shank* v. *Shoemaker*, 18 N. Y. 489 ; *Adams* v. *Sage*, 28 N. Y. 103 ; *Parsons* v. *Hughes*, 9 Paige, 591 ; *Graham* v. *Meyer*, 99 N. Y. 611.)

GRAY, J. The finding of fact by the trial court with respect to the representations made by the defendant to the plaintiff, in order to procure from her the instruments in settlement of their differences, which are the subject of this action, is in the alternative, viz. : that the defendant was interested, or was about to become interested, as a co-partner in the firm of Higgins & Co. The allegation of the complaint was that the defendant represented to the plaintiff that he was interested as a co-partner in the firm of Higgins & Co. The finding of fact is, therefore, not as the fact was alleged in the complaint to be. It may be read, either that the defendant made representations to the plaintiff in the alternative form set forth in the finding ; or that the defendant represented the one or the other fact with respect to the firm of Higgins & Co. The argument of the appellant is that the finding is not in the alternative ; but that it states a representation by

the defendant in the alternative ; that is to say, that he was interested, or was about to become interested, as a co-partner with Higgins & Co.

It appears that after the judgment, which the plaintiff had recovered against the defendant, had been opened and when leave was given to the defendant to answer the complaint in the action, the plaintiff and defendant got together and agreed between themselves to settle their differences and with that purpose in their minds, they went to the office of the plaintiff's lawyer to have the matter put into legal shape. According to the plaintiff's own testimony, the representations which the defendant had made to her, to bring about the settlement, were to the effect, either that he was going to have an interest in the firm of Higgins & Co., or that he was about becoming interested in the firm; and in no instance does she testify that the defendant represented, as she has alleged in the complaint, that he was interested as a co-partner in the firm. It is clear that she failed to sustain the allegations of her complaint by her own evidence concerning the statement or representation made to her by the defendant, and upon which she says she had agreed to settle, and it is with respect to what he said to her and upon which her mind acted in coming to an agreement to settle, that the court is concerned. Looking at the finding in its alternative phase, that the defendant represented that he was about to become interested as a co-partner of Higgins & Co., the finding would not warrant the judgment below. It was admitted, and so testified by the defendant, that he was not interested in the firm of Higgins & Co., at any time; but he did not testify that he had not expected to be a partner in the firm and there was no evidence in the case that it was not true that he was about to become interested as a co-partner with Higgins & Co. The burden was upon the plaintiff to show that such a representation, if made, was false and that it was deceitfully and fraudulently made and this she failed to do. It is a familiar rule, where representations consist in mere expressions of hope, expectations

and the like, that the party to whom they are made is not legally justified in relying upon them and assuming them to be true. The representation of what one expects, or hopes, as about to take place, in order to induce action on the part of the person to whom made, may be honest, or may be fraudulent. If the former, then no action will lie upon the ground of fraud, if the expectation is not realized. If the representation is made fraudulently and with the intention to deceive, then the evidence must exhibit it in that character. For the presumption will be, in the absence of such evidence, that the person making the representation did so honestly, however extravagant in his hopes. What has been said upon this phase of the appeal is in accord with the reasoning, in part, employed by the learned General Term below. We might, in affirming the determination of that court, rest upon its opinion, were it not that there is another ground upon which the judgment should have been reversed and which obviates the difficulty of a point taken by the appellant that this question was not sufficiently raised by a proper exception to the finding of fact as to the misrepresentations. It is insisted that the exception was too general to be availed of by the appellant at the General Term. If the argument is sound, (and I doubt it), it is not necessary to pass upon the question, or that the case should rest there.

I think that the judgment recovered by the plaintiff in the trial court was properly reversed by the General Term, for the reason that the plaintiff has not offered to restore the defendant to the position which he occupied, at the time when the agreement for settlement was made between them, and the court in its decree has not provided for such restoration as a condition of awarding the relief demanded. The conclusions of law, reached by the trial court and upon which the judgment was ordered, were that the satisfaction of the judgment should be vacated and that the plaintiff was entitled to collect her judgment by execution. Exceptions were taken to these conclusions and enable us to consider their correctness. A court of equity shapes its

remedy so as to meet the demands of justice and, as said by Mr. Pomeroy, in his work on Equity Jurisprudence, (§ 910) " the fundamental theory upon which equity acts is that of restoration — of restoring the defrauded party primarily, and the fraudulent party as a necessary incident, to the positions which they occupied before the fraud was committed. Assuming that the transaction ought not to have taken place, the court proceeds as though it had not taken place, and returns the parties to that situation." In *Graham* v. *Meyer* (99 N. Y. 611), which was an action to set aside the settlement of a judgment and where, as here, the judgment was not an undisputed claim, it was said : " Before the plaintiff can have the compromise annulled on the ground of fraud, he was bound to restore to the defendant the money paid to him with the interest, and also to restore to him, so far as he could, his right to prosecute his writ of error to the Supreme Court from the judgment, in case, for any reason, by the lapse of time, he had lost it." In that case the judgment, as to which a settlement had been effected, could have been assailed by writ of error to the Federal Supreme Court and the defendant was seeking to do so. In the present case, at the time the parties agreed upon the settlement, the defendant had secured the right by the order of the court to contest the plaintiff's claim, upon which she had entered judgment against him, by serving an answer within ten days. By this decree that judgment was restored and adjudged to be enforceable against the defendant. This was going further than was warranted upon principles of equity. Concisely stated the case is this : The plaintiff stipulates to satisfy the judgment, to discontinue the action and to release the defendant generally, upon condition that he pay her attorney's fees and the sheriff's fees. He complies and the stipulation being executed by both parties, there is the apparent end of all differences. When this action is brought, on the ground that the agreement of settlement was procured by fraudulent representations, the issue turns upon the credibility of the parties and its decision against the defendant leaves him, though having performed the

45

expressed conditions of the settlement, without the right which he had gained, and which he gave up for the agreement, viz.: the right to contest her claim. In *Gould* v. *Cayuga Bank*, (86 N. Y. at p. 79), it was said with reference to the general rule that a party seeking to rescind a contract must restore to the other party what he has obtained, that "the effect of the avoidance of an agreement on the ground of fraud, is to place the parties in the same position as if it had never been made and all rights which are transferred, released, or created by the agreement are revested, restored, or discharged by the avoidance."

The making of the representations sworn to by the plaintiff was denied by the defendant, as was also any promise to pay the judgment. And it is to be observed that the agreement contained no such promise. Though the court credited the plaintiff's evidence and set aside the instruments she had executed, it should have restored both parties to the situation in which they were when the agreement of settlement was made. However unwilling the trial court to believe the defendant's evidence, a just application of equitable principles in such cases required that the decree should confine the remedy to the cancellation of the instruments of release and of satisfaction of judgment and that it should return both parties to the situation in which they were previously to their making. This equitable rule is not only generally an essentially just one; but in this case it is especially so. The judgment now adjudged to be collectible of the defendant was obtained under circumstances well calculated to excite a reasonable suspicion of its correctness; entered as it was some ten years after the alleged service of the summons.

When this case was in this court before, upon appeal from a dismissal of the complaint at the Circuit upon the plaintiff's opening, (127 N. Y. 555), it was decided that the trial judge had committed an error and that on the face of the complaint a good cause of action was stated. In answer to the defendant's point that the complaint should have alleged a return, or tender, of the moneys paid by him to the plaintiff's attorney,

it was observed that the allegation was unnecessary; inasmuch as the court was bound to assume, for the purpose of the appeal, that the complaint was true and, therefore, the plaintiff was entitled to retain the moneys thus indirectly received by her. It was said: "If her action failed, she was entitled to the sum received by virtue of the transaction itself. If she succeeded, the sum was less than she was concededly entitled to by the original judgment." What we are now discussing, namely; that the trial court, in finally decreeing, in behalf of the plaintiff, the cancellation of her satisfaction of judgment and that she might recover that judgment of the defendant, disregarded the equitable rule in such cases and that it should have restored the parties to their original situation, where the judgment was opened and the plaintiff's claim allowed to be disputed. This point, of course, was not up on the prior appeal.

For the reasons stated, I think the order appealed from should be affirmed and that judgment absolute should be rendered against the appellant, upon her stipulation.

O'BRIEN, J. (dissenting). The General Term having reversed the judgment in favor of the plaintiff, and granted a new trial, she is now before this court, by her appeal, contending that the decision is wrong in point of law. The grounds upon which the reversal proceeded have been made very plain by the opinion of the learned judge, which appears in the record. They are either that the judgment was not warranted by the facts found, or that the facts found were not warranted by the pleadings and proofs. No other ground has been suggested by the learned court below for disturbing the judgment. We have not been able to concur in the reasons of the court below for the judgment of reversal, but a new ground, not noticed by the court below, has been suggested upon which the reversal can be sustained. The plaintiff, in order to present her case to this court, was obliged to stipulate that in case it should appear that her appeal was not well taken, judgment final and absolute shall be rendered against

her. If we are to look through the record, under such circumstances, to find reasons for sustaining a judgment which, concededly, was put by the court below upon erroneous grounds, we ought, at least, to be reasonably sure that the new point is a good one. We ought not to defeat the plaintiff's cause of action, upon which she has twice recovered judgment, upon a ground never suggested before, unless that ground seems to be supported by reason and law.

In order to properly appreciate the real value and importance of the point upon which it is now proposed to sustain the order of reversal, we must get a clear idea of the nature of this action and the issues which were before the Special Term for trial, upon which the plaintiff was successful. The cause of action stated in the complaint is very clear and simple. It was a bill in equity to cancel and remove from the record a satisfaction of a judgment which the plaintiff had recovered against the defendant and a release of the cause of action, on the ground that they had been procured by fraud, practiced upon the plaintiff by the defendant and, incidentally, to enforce the judgment. The defendant's answer was, that while it was true that the judgment had been entered against him in due form of law, yet it was in fact wholly void for the reason that no process had ever been served upon him, and, further, he denied all fraud in procuring the instrument of discharge and release. It appeared that many years ago, when the judgment was entered, that the defendant promptly moved to vacate it before the court in which it had been entered on the ground that no process had been served upon him. He was defeated in that motion and the order then made by the court set that question at rest by a proper adjudication. Hence, there was no attempt to re-try the question in this action and no evidence whatever was given on that issue. The defendant staked his case on the single issue of fraud, which the trial court found against him and the General Term in his favor.

The judgment was entered November 10, 1874, by default upon an assessment by a sheriff's jury, and the defendant's

motion to set it aside for non-service of process resulted in an order, made and entered November 21, 1874, which denied that motion, but permitted the defendant, upon paying costs, consenting to a reference of the cause and short notice of trial, to answer the complaint within ten days. He did not elect to answer, but, before the expiration of the time, procured from the plaintiff the discharge and release which the trial court found she had been induced to execute through fraud.

The ground upon which it is now proposed to sustain the action of the General Term in reversing the judgment upon the issue of fraud is, that inasmuch as the trial court, in its judgment, omitted to restore the defendant to the position which he occupied when he induced the plaintiff to sign the discharge and release, that is to say, to the right to answer and defend, the judgment is for that reason erroneous in point of law.

It should be noted that the defendant has not indicated in any way by his answer that he desired to make any defense to the original cause of action or had any defense to make. Nor did he in any way indicate that if the issue of fraud was decided against him that he desired to answer the original claim or the judgment or had any defense. He presented no issue except on the question of fraud and interposed no equities against the judgment.

Since the plaintiff, in her complaint in this action, not only asked the court to set aside the fraudulent discharge, but also to declare her judgment valid and to enforce it, and since that judgment had once been opened for any defense that the defendant had, it was competent for him in this action to interpose such defense as an equity against the judgment.

Moreover, the defendant did not in any way at the trial indicate by any motion, request or suggestion that he desired to answer or that any provision for that purpose should be made in the judgment. When this case was tried in 1893 it was, of course, impossible to put the defendant back to where he was in 1874. The trial court had no power except to try and dispose of the issues made by the pleadings. If the

defendant by his own fraud had lost the benefit of the order permitting him to answer, his remedy was to renew his motion in the court in which it was pending upon new facts. It may be that the trial court might have made that part of the decree which provides for enforcing the judgment conditional upon the failure of the defendant within a specified time to obtain permission to answer upon renewal of his motion. But the court was not asked to do even that, and the attention of the court was not in any way called to the question. It seems to me that we ought not to defeat the plaintiff's cause of action by rendering judgment absolute against her for no other reason than that the trial court omitted to give to the defendant a privilege or favor which he never asked.

The defendant was in default. He had omitted to avail himself of the order permitting him to answer. A party in default has no absolute right to relief, and he must at least ask for it. Even if the defendant had asked the trial court in this case for such relief and it had been refused, such refusal would not have been legal error. It would clearly have been such an exercise of discretion as this court could not review. To predicate legal error, sufficient to warrant the reversal of a judgment, upon such a point would seem to be impossible. I am not aware of any reason why it is not yet open to the defendant to make his application by motion to the court in which the judgment was rendered to revive the order permitting him to answer the original complaint. It is true that it would be discretionary with the court to grant or refuse the motion; but, if that is so, how can we now say that the trial judge in this case committed a legal error in omitting to provide for precisely the same relief, especially when it was not called for by any pleading or requested at any stage of the trial? In the one case the court would, at least, have the question regularly before it in the form of a special motion. In the latter case the question was not before the trial court in any form whatever, and yet it is urged that he committed a legal error because his judgment setting aside the satisfaction and release was not also coupled with the permission to the

defendant to answer the original complaint, a favor which he
did not consider of importance enough to him to ask the
court to grant.

The powers and duties of the trial judge were confined to
the trial of the single issue before him, which was that of
fraud. The right of the defendant to open the default and
plead in another action was not in any way before him. If
the defendant had succeeded upon that issue he would have
sustained the discharge and release, and there would not then
be any necessity to plead. If he failed, his remedy was to do
just what he was obliged to do in 1874, when in default, that
is, to apply to the proper court by motion. The considerations
upon which such an application is granted or denied had no
place upon the trial of the issue in this action, and could not
properly have been interjected into the trial. If the judgment
cannot be sustained upon the ground that it was placed by the
learned General Term, it seems quite plain to me that it can-
not upon the new ground suggested. The order of Novem-
ber, 1874, imported much more than the right of the defendant
to answer within ten days. It provided for a reference of the
issues to be formed by such answer, and for the trial of such
issues before the referee upon short notice. At the time of
the trial of the present action before the Special Term the
referee designated in the order was dead. If the trial judge
in this case was bound, as matter of law, to preserve the status
of the defendant in the former suit, it must follow, of course,
that he was bound to make an arbitrary direction for the serv-
ice of an answer, and also for the trial of the issue formed
thereby by a referee to be designated by himself, and that
such trial proceed upon short notice. If the trial judge had
in fact, without any suggestion in the answer or from any
source at the trial, inserted such a provision in the judgment,
it might well be regarded as a very questionable exercise of
power, and would afford to the defendant a much more seri-
ous ground of complaint than he now has. I cannot believe
that the judgment of the trial court is fatally erroneous because

it failed to exercise such power without a suggestion to that effect from either party at the trial.

I think the order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs.

ANDREWS, Ch. J., BARTLETT, HAIGHT and MARTIN, JJ., concur, with GRAY, J., for affirmance; VANN, J., concurs with O'BRIEN, J., for reversal.

Order affirmed and judgment accordingly.