(21 Misc. Rep. 674.)

STUMPF et al. v. SARGENT et al.

(Supreme Court, Appellate Term.    November 24, 1897.)

1. CONTRACT—CONSTRUCTION.
Defendants agreed in writing to pay $40 for a quarter-page advertisement in the Bowling Green edition of Stafford's New Magazine, upon representations that the advertisements were to be confined to subcontractors on the Bowling Green Building, and the issue to be supervised by specified architects, engineers, etc. In an action to recover the agreed price, defendants claimed the representations to have been that those persons were to have exclusive supervision, including all details of size, paper, etc. *Held*, that the facts warranted a judgment for plaintiff.

2. FRAUDULENT REPRESENTATIONS—EXPRESSIONS OF OPINION.
Representations amounting merely to commendatory expressions, hopes, and prospects, though exaggerated, are not always regarded as fraudulent, and, unless they relate to some material fact on which the party claiming to have been injured had the right to and did rely, to his prejudice, they will not avoid a contract.

Appeal from the Tenth district court.

Action by Anthony Stumpf and others against Joseph B. Sargent and others.  From the judgment of the district court, defendants appeal.    Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

T. S. Corey, for appellants.

F. D. Haines, for respondents.

McADAM, J.   The action is by the assignee of H. Stafford, the proprietor of a periodical known as Stafford's New Magazine, for publishing therein an advertisement for the defendants.   On January 16, 1896, P. Minturn Smith, president of the Standard Structural Company, wrote to the defendants as follows:

"Messrs. Sargent & Co.—Gentlemen: The bearer, Mr. J. A. Rhodes, representative of Stafford's New Magazine, will call upon you to solicit your advertisement for the Bowling Green Office Building edition of this magazine. This edition is being prepared under the supervision of Mr. Bill, Messrs. Audsley, and the writer, and, in view of the matters of historic interest and other data pertaining to this location, there will be given to this paper an interest which an ordinary advertising issue could not possibly have.  The advertisements will be limited to our subcontractors, and the extent of the advertising patronage will, of course, have its effect as to the amount of money to be expended on this edition.  Some of our principal subcontractors, such as Messrs. John A. Roeblings' Sons Company and Messrs. Otis Brothers & Company, have taken a full page, to cover a good-sized cut of their works, so that we can exhibit the different plants from which the supplies for the construction of this building have been drawn.  In addition to Mr. Trask's portrait, we shall have a full-page view of their banking house.  Commending Mr. Rhodes to your favorable consideration, I remain, yours, very truly,                  P. Minturn Smith, President."

The letter was presented by the Mr. Rhodes mentioned therein to the defendants, who thereupon signed a paper in these words:

"N. Y., January 30, 1896.

"H. Stafford is hereby authorized to insert our advertisement in Stafford's New Magazine, Bowling Green edition, to occupy the space of ¼ page for the term of one month, for which we agree to pay the sum of $40 upon receiving 25 copies of magazine.                                 Sargent & Co."

The plaintiffs' assignor performed all the conditions of the agreement on his part, and on the refusal of the defendants to pay the stipulated price the plaintiffs, as his assignees, sued to recover the same.

The defense is that Mr. Rhodes, Stafford's agent, made certain misrepresentations to the defendants, in that he stated that he had agreed with Mr. Smith, the writer of the letter, that the Bowling Green edition should be devoted entirely to said Bowling Green Building, and to the advertisements of parties engaged in constructing the same; that Smith and the architects and engineers of the building should have the supervision of said edition; and that the details of said edition, as to its printed matter, style, and quality of paper, design of cover, cuts, etc., were to be determined by Smith, and the get-up to be of a high standard. The defendants had, prior to giving the order, estimated for work on the building, and were expecting a contract therefor from the structural company, and were naturally anxious to please Mr. Smith, the president of the company. The defendants' witness Oakley testified that the defendants at first refused to sign the order for the advertisement, because they had not then secured the contract from the structural company, but that on the assurance of Smith that all was right they finally did sign it. It seems that the defendants subsequently obtained the contract they sought. The representations made by Rhodes were substantially a repetition of the statements contained in the letter from Smith, and it was evidently on the strength of that letter that the defendants signed the order to Stafford. It is not contended that anything written by Smith was untrue, or that he was in any sense a party to a wrong. The extent of the supervision by Smith as to details may have been extravagantly stated by Rhodes to the defendants, but in their material parts the statements made by him were true. The defendants knew, when they signed the order, that the advertisement was to be inserted in Stafford's New Magazine, and that H. Stafford was the proprietor and publisher thereof, because those facts are recited in the order itself. It must be assumed, therefore, that the defendants did not expect or believe that Stafford was going to surrender the Bowling Green edition of his regular monthly magazine to the complete control of Smith, but must have known that the latter's supervision was merely to be of a perfunctory character, purely incidental to the special work at hand, leaving the general style and scope of the periodical in other respects as before, so that the regular monthly numbers might be bound in volumes as the publication of the magazines progressed. Construing what was said and done in the light of the facts and the surrounding circumstances, there is no substantial ground for holding that the defendants were deceived by anything said by Rhodes, the canvasser, or for even the imputation of wrongdoing on the part of anyone instrumental in obtaining the defendants' order for their advertisement. Representations amounting merely to commendatory expressions, hopes, or prospects, though exaggerated, are not always regarded as fraudulent (Clark, Cont.

[Hornbook Ed.] 335; Kley v. Healy, 149 N. Y. 346, 351, 44 N. E. 150), and, unless they relate to some material fact on which the party claimed to have been injured had the right to and did rely to his prejudice, they will not avoid the contract. The justice on the evidence found all the facts against the defendants, and, in view of the finding, which is supported by strong corroborating circumstances, it cannot be said that his conclusion is erroneous.

The judgment must be affirmed, with costs. All concur.