CATHERINE ADAMS, Respondent, *v.* ALEXANDER L. GILLIG, Appellant, Impleaded with Others.

Contract — executory provisions must be stated in the contract — what fraud is sufficient to sustain an action to avoid a contract — when equity will direct a reconveyance of lands purchased upon false representation by grantee of intention to build private residences.

Promises of future action that are a part of the contract between the parties, to be binding upon them, must be stated in the contract. An oral restrictive covenant, or any oral promise to do or refrain from doing something affecting the property about which a written contract is made and executed between the parties, will not be enforced, and statements promissory in their nature and relating to future actions must be enforced, if at all, by an action upon the contract.

But the rule with regard to including the entire agreement between the parties in the writing does not take away or detract from the general rule by which a contract can always be set aside for fraud affecting the transaction as to a material fact that is not promissory in its nature. Any statement of an existing fact material to the person to whom it is made that is false and known by the person making it to be false and which is made to induce the execution of a contract, and which does induce the contract, constitutes a fraud that will sustain an action to avoid the contract if the person making it is injured thereby.

Defendant purposely, intentionally and falsely stated to the plaintiff that
he desired to purchase a portion of her vacant lot, located in a residence
district, for the purpose of building a dwelling or dwellings thereon.
These representations were false and fraudulent and made with the
intent to deceive the plaintiff who relied thereon and executed a con-
veyance to defendant.   Defendant while negotiating intended to build,
and immediately after the purchase proceeded to arrange for building,
a public automobile garage on the lot, the construction of which will
greatly damage plaintiff's remaining property.   The plaintiff without
delay communicated with the defendant and offered to procure another
site for his garage, pay all the expenses he had incurred up to that time
and restore the consideration he had paid for the property if he would
reconvey the property to her.   This the defendant refused to do.
*Held,* that since equity will interfere to grant relief where necessary to
prevent the consummation of a fraud, the false statements made by the
defendant of his intention should, under the circumstances, be deemed
to be a statement of a material, existing fact of which the court will
lay hold for the purpose of defeating the wrong that would otherwise
be consummated thereby.

*Adams* v. *Gillig,* 131 App. Div. 494, affirmed.

(Argued May 18, 1910;  decided October 11, 1910.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
March 19, 1909, affirming a judgment in favor of plaintiff
entered upon the report of a referee.

The defendant Gillig is the person to whom the deed here-
inafter mentioned was given.   The defendants Frank C.
Kempf and Nicholas Kempf are contractors, who, at the time
of the commencement of this action, were under contract with
the defendant Gillig to do certain work upon the real prop-
erty described in said deed.   When the defendant is
hereinafter referred to, the defendant Gillig is intended.

On and prior to June 2, 1908, the plaintiff was the owner
in fee simple of a lot of land one hundred feet front and
about one hundred and sixty feet in depth, situated on the
east side of Elmwood avenue in the city of Buffalo, and also
of two other lots of land fronting on Highland avenue in said
city, and which run back to and adjoin the first-mentioned
lot.   The lots fronting on Highland avenue had houses on
them, and the lot fronting on Elmwood avenue was vacant.

The immediate neighborhood of said lots, so far as the same have been built upon, is devoted exclusively to residences.

The defendant sought to purchase a portion of the plaintiff's lot fronting on Elmwood avenue and stated that he desired to purchase the same for residence purposes. The negotiations were carried on with the plaintiff's agents, and the defendant stated to the representative of the plaintiff's agents and also to the agents themselves that he intended to build dwellings upon the lot if purchased. The plaintiff's agents communicated to her the statement of the defendant and his offers, and she asked her agents if they were sure the sale would not affect the value of the remaining vacant lot, and she was told by her agents that the defendant would build either single or double houses upon the lot so to be purchased.

The representations of the defendant that he intended to build dwellings on the lot to be purchased by him were false and fraudulent and made with the intent to deceive the plaintiff. The plaintiff relied upon the representations of the defendant that he intended to build dwellings upon the lot when purchased, and believing such statements to be true, executed and delivered to him a deed of sixty-five feet front and one hundred and sixty feet in depth in consideration of $5,525.

During all the time that the defendant was negotiating for the purchase of the lot in question he intended to build a public automobile garage thereon, which fact was unknown to the plaintiff and which the defendant fraudulently concealed from her.

On the day following the purchase of said lot the defendant instructed his architect to prepare plans for a garage to be built thereon to cover substantially the entire lot, and in less than two weeks thereafter he entered into a contract for the erection of such garage.

The plaintiff without delay communicated with the defendant and offered to procure another site for his garage, pay all the expenses he had incurred up to that time and restore the consideration he had paid for the property if he would recon-

vey the property to her. This the defendant refused to do. The plaintiff was deceived by said misrepresentations of the defendant and the construction of the proposed garage will greatly damage the remaining property belonging to the plaintiff. It will decrease the value of the remaining vacant lot on Elmwood avenue about one-half, and the value of her lots, with houses fronting on Highland avenue, about one-fourth. The referee found in favor of the plaintiff and directed a reconveyance of the property. From the judgment entered upon the report of the referee an appeal was taken to the Appellate Division of the Supreme Court, where it was affirmed by a divided court.

*Horace McGuire, V. H. Riordan* and *Paul J. Batt* for appellant. The referee's conclusion of law that the plaintiff was entitled to a rescission of the contract and deed constituted error. ( *Wilson* v. *Dean,* 74 N. Y. 531 ; *Dyer* v. *Walton,* 79 Ga. 466 ; *Kley* v. *Healy,* 127 N. Y. 561 ; *Gray* v. *Palmer,* 2 Robt. 500 ; *Lexow* v. *Julian,* 21 Hun, 577 ; *Gallagher* v. *Brunel,* 6 Cow. 346 ; *Gage* v. *Lewis,* 68 Ill. 604 ; *Haenni* v. *Bleisch,* 146 Ill. 262 ; *State* v. *Blizo,* 37 Ore. 404.)

*Adelbert Moot, Helen Z. M. Rogers* and *James W. Persons* for respondent. The conclusion of law that the plaintiff was entitled to a rescission of the contract and deed was the necessary and logical result of the facts found. ( *Hennequin* v. *Naylor,* 24 N. Y. 139 ; *O. C. T. Co.* v. *D. L. & T. Co.,* 89 Fed. Rep. 794 ; *Meldrum* v. *Meldrum,* 15 Col. 478 ; *De Lissa* v. *Coal Co.,* 59 Kan. 319 ; *Horton* v. *Lee,* 106 Wis. 439 ; *A. H. Co.* v. *Baker,* 18 Ohio C. C. 604 ; *Ilgenfritz* v. *Ilgenfritz,* 116 Mo. 429 ; *Dowd* v. *Tucker,* 41 Conn. 197 ; *Langley* v. *Rodriguez,* 122 Cal. 580 ; *Williams* v. *Kerr,* 152 Penn. St. 560.)

Chase, J. Any contract induced by fraud as to a matter material to the party defrauded is voidable. There are many rules as to what constitutes an inducement by fraud, and also affecting the general statement that any contract will be set aside for fraud, that have been established as necessary to

protect the rights of all the parties to a contract, which need not be stated in this discussion, except so far as they affect the particular transaction under consideration.

It may be assumed that promises of future action that are a part of the contract between the parties, to be binding upon them, must be stated in the contract. An oral restrictive covenant, or any oral promise to do or refrain from doing something affecting the property about which a written contract is made and executed between the parties, will not be enforced, not because the parties should not fulfill their promises and their legal and moral obligations, but because the covenants and agreements being promissory and contractual in their nature and a part of, or collateral to a principal contract, the entire agreement between the parties must be deemed to have been merged in the writing. The value of a writing would be very seriously impaired if the rule mentioned in regard to including the entire agreement in such writing is not enforced.

A strict enforcement of such rule tends to greater security and safety in business transactions and leaves less opportunity for dishonesty and false swearing, induced, perhaps, by a change of purpose or a failure to obtain the result that was anticipated when the transaction was originally consummated and reduced to writing. Such rule makes it necessary for the parties to a written contract to include everything therein pertaining to the subject-matter of the principal contract, and if by mistake or otherwise an oral agreement, a part of the transaction, is omitted from the writing, it can only be made effective and enforceable by a reformation of the writing, so that the same shall include therein the entire agreement between the parties. The rule is quite universal that statements promissory in their nature and relating to future actions must be enforced if at all by an action upon the contract. It is unnecessary to decide or discuss the question whether under some possible circumstances the courts will not in equity lay hold of false statements that are contractual in their nature to prevent the consummation of a fraud.

It is not claimed on this appeal that the defendant made promises which became a part of the contract, or that the deed could be reformed by including therein restrictive covenants. The rule in regard to including the entire agreement between the parties in the writing does not take away or detract from the general rule by which a contract can always be set aside for fraud affecting the transaction as to a material fact that is not promissory in its nature. Any statement of an existing fact material to the person to whom it is made that is false and known by the person making it to be false and which is made to induce the execution of a contract, and which does induce the contract, constitutes a fraud that will sustain an action to avoid the contract if the person making it is injured thereby.

We have in this case findings by the trial court sustained by the record, which show that the defendant purposely, intentionally and falsely stated to the plaintiff that he desired to purchase a portion of her vacant lot for the purpose of building a dwelling or dwellings thereon. He must have known that if he thereby induced her to convey to him such portion of the lot and his intention to build a garage thereon was carried out it would injure her to an extent in excess of the full consideration to be paid by him to her for such lot.

The plaintiff relied upon the defendant's honesty and good faith in the purchase, and was apparently willing to take her chances of a subsequent change in his intention, or of his selling the lot to another whose intentions and purposes might be entirely different.

The simple question in this case is, therefore, whether the alleged intention of the defendant to build a dwelling or dwellings upon the lot which he sought to purchase is such a statement of an existing material fact as authorizes the court to cancel the deed because of the fraud.

The distinction between a collateral agreement as a part of a contract to do or not to do a particular thing, and a statement and representation of a material existing fact made to induce the contract may be further profitably considered.

A promise as such to be enforceable must be based upon a consideration, and it must be put in such form as to be available under the rules relating to contracts and the admission of evidence relating thereto. It may include a present intention, but as it also relates to the future it can only be enforced as a promise under the general rules relating to contracts.

A mere statement of intention is a different thing. It is not the basis of an action on contract. It may in good faith be changed without affecting the obligations of the parties. A statement of intention does not relate to a fact that has a corporal and physical existence, but to a material and existing fact nevertheless not amounting to a promise but which as in the case under discussion affects and determines important transactions. The question here under discussion is not affected by the rules relating to the admission of testimony. As it was not promissory and contractual in its nature there is nothing in the rules of evidence to prevent oral proof of the representations made by the defendant to the plaintiff. In an action brought expressly upon a fraud, oral evidence of facts to show the fraud is admissible. (Pomeroy's Equity Jurisprudence, sec. 889.)

This case stands exactly as it would have stood if the plaintiff and defendant before the execution and delivery of the deed had entered into a writing by which the defendant had stated therein his intention as found by the court on the trial and the plaintiff had stated her acceptance of his offer based upon her belief and faith in his statement of intention, and it further appeared that the statement was so made by the defendant for the purpose of inducing the plaintiff to sell to him the lot, and that such statement was so made by him falsely, fraudulently and purposely for the purpose of bringing about such sale.

Intent is of vital importance in very many transactions. In the criminal courts it is necessary in many cases for jurors to determine as a question of fact the intent of the person charged with the crime. Frequently the life or liberty of the prisoner at the bar depends upon the determination of such

question of fact. In civil actions relating to wrongs, the intent of the party charged with the wrong is frequently of controlling effect upon the conclusion to be reached in the action. The intent of a person is sometimes difficult to prove, but it is nevertheless a fact and a material and existing fact that must be ascertained in many cases, and when ascertained determines the rights of the parties to controversies. The intent of Gillig was a material existing fact in this case, and the plaintiff's reliance upon such fact induced her to enter into a contract that she would not otherwise have entered into. The effect of such false statement by the defendant of his intention cannot be cast aside as immaterial simply because it was possible for him in good faith to have changed his mind or to have sold the property to another who might have a different purpose relating thereto. As the defendant's intention was subject to change in good faith at any time it was of uncertain value. It was, however, of some value. It was of sufficient value so that the plaintiff was willing to stand upon it and make the conveyance in reliance upon it.

The use of property in a particular manner changes from time to time and restrictive covenants of great value at one time may become a source of serious embarrassment at a later date. The fact that restrictive covenants cannot ordinarily be drawn to bend to changed conditions has made many purchasers disinclined to accept conveyances with such covenants. A restrictive covenant in a deed may be of sufficient importance to justify a refusal by a contractee to accept a conveyance subject to such conditions. A person in selling property may be quite willing to execute and deliver a deed thereof without putting restrictive covenants therein and in reliance upon the good faith of express, unqualified assurances of the present intention of the prospective purchaser. In such case the intention is material and the statement of such intention is the statement of an existing fact.

Unless the court affirms this judgment, it must acknowledge that although a defendant deliberately and intentionally, by false statements, obtained from a plaintiff his property to

21

his great damage it is wholly incapable of righting the wrong, notwithstanding the fact that by so doing it does in no way interfere with the rules that have grown up after years of experience to protect written contracts from collateral promises and conditions not inserted in the contract.

We are of the opinion that the false statements made by the defendant of his intention should, under the circumstances of this case, be deemed to be a statement of a material, existing fact of which the court will lay hold for the purpose of defeating the wrong that would otherwise be consummated thereby.

We have not overlooked the many authorities called to our attention by the appellant. In *Wilson* v. *Deen* (74 N. Y. 531); *Kley* v. *Healy* (127 N. Y. 555, 561); *Gray* v. *Palmer* (2 Rob. 500; affd., 41 N. Y. 620); *Lexow* v. *Julian* (21 Hun, 577; affd., 86 N. Y. 638); *Gallager* v. *Brunel* (6 Cow. 346); *Gage* v. *Lewis* (68 Ill. 604); *Haenni* v. *Bleisch* (146 Ill. 262), and many other cases in this and other states the court had under consideration representations that were promissory and contractual in their nature, and which, if enforced at all, could only be enforced under the rules relating to contracts.

We are unable to find authorities where the exact question considered herein has been directly discussed by the court, but the principle herein annunciated finds support in *Hennequin* v. *Naylor* (24 N. Y. 139); *Old Colony Trust Co.* v. *Dubuque Light & Traction Co.* (89 Fed. Rep. 794); *Edgington* v. *Fitzmaurice* (L. R. [29 Ch. Div.] 479); *Williams* v. *Kerr* (152 Pa. St. 560); *Lewis* v. *Gollner* (129 N. Y. 227); *Butler* v. *Watkins* (13 Wall. 456), and other cases.

Equity will interfere to grant relief where necessary to prevent the consummation of a fraud. (*Freeman* v. *Freeman*, 43 N. Y. 34.)

It is said that this decision will open the door to other litigation. If that is the effect of it, then, so far as the decision asserts power in the court to prevent dishonesty, false dealing and bad faith in business transactions, it should be welcomed.

It is not the intention of the court to extend the effect of this decision by implication, or to a case other than one where the facts are clearly found against the defendant.

The courts will be vigilant to prevent the rescission for fraud of a contract deliberately made unless the fraud is admitted or proven by most satisfactory evidence. (6 Cyc. 336.)

We do not concede the accuracy of the statement made before us on behalf of the defendant to the effect that false statements similar to the one made by the defendant to induce the execution of the deed by the plaintiff are common in business transactions, but if true, and controversies arise over the retention of the fruits of such frauds, and the fraudulent inducement is conceded or proven beyond reasonable controversy, the transactions will not have the approval and sanction of the courts.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment affirmed.