Fred S. Hone, as Trustee, Etc., Appellant, *v.* Louis J. Burr, Respondent.

(County Court, Oneida County, August, 1915.)

Landlord and tenant — requirement as to written contract — action for rent — lease — when enttled to recover — false representations.

The law requires that when a written contract is made the parties shall embody all the terms of the contract therein and forbids either party to come into court and say that it is only partial, incomplete and should have contained other provisions.

In an action to recover rent under a written lease, the defense that it was procured by false and fraudulent representations and, therefore, void was raised by an allegation "That prior thereto, and at the time of the making of said lease, and for the purpose of inducing the defendant to make said lease, plaintiff falsely and fraudulently represented to defendant that plaintiff would have the house on said premises newly papered and painted throughout, and that he would thoroughly repair the floors of said house and that he would install a new bath; and that he would have all of the said repairs and work done before the first day of May, 1915, and that said house would be in first class condition and ready for occupancy by defendant, so repaired, by plaintiff, by the first day of May, 1915." The lease, dated in April, 1915, for a term commencing May 1, 1915, contained no such agreement and all that was proven was that plaintiff did not in fact make repairs by May first. Held, that as the evidence failed to establish a fraudulent intention on the part of plaintiff at the time he made the promises in question, and as the promises if in fact made should have been included in the lease, plaintiff was entitled to recover, and a submission of the case to the jury was error.

The jury not only failed to award plaintiff the rent for June but found against him in a verdict representing the amount paid by defendant for the May rent apparently upon the theory that plaintiff was not entitled to the rent of either month and, therefore, restored the payment to defendant. Held, that the case should not have been submitted to the jury, that its findings were entirely contrary to the law and evidence, and that the judgment in favor of defendant should be reversed and a new trial ordered.

APPEAL on questions of law from a judgment rendered in Justice's Court, city of Utica, upon a verdict of a jury.

Charles J. Fuess, for plaintiff-appellant.

Southworth & Scanlan, for defendant-respondent.

HAZARD, J.  This action was brought to recover twenty-five dollars for one month's rent of certain premises in Utica. There was a written lease, under seal, the term commencing May 1, 1915. Defendant paid rent for the first month, but did not take possession of the premises. This action was brought to recover the June rent, but the jury not only failed to award the plaintiff the rent for June, but found against him a verdict of twenty-five dollars, representing the money paid by the defendant for the May rent, apparently upon the idea that the plaintiff was not entitled either to the May or June rent, and therefore restored the payment to the defendant. The defense, briefly stated, was that the lease was procured by false and fraudulent representations, and hence was void.

While various cases are cited by the respondent in support of his contention, the only one which impresses me as being of any importance, and which raises perhaps a serious question in the case is *Adams* v. *Gillig,*

199 N. Y. 314, and I have given that case very serious consideration and study in connection with this appeal. To make the situation plain it becomes necessary to set forth that part of the answer which raises the issue in question, and reads as follows: " That prior thereto, and at the time of the making of said lease, and for the purpose of inducing the defendant to make said lease, plaintiff falsely and fraudulently represented to defendant that plaintiff would have the house on said premises newly papered and painted throughout, and that he would thoroughly repair the floors of said house, and that he would install a new bath; and that he would have all of the said repairs and work done before the first day of May, 1915, and that said house would be in first class condition and ready for occupancy by defendant, so repaired, by plaintiff, by the first day of May, 1915."

The lease in question is dated April 19, 1915, and no such agreement as is above referred to appears in the lease, and the question is thus presented as to whether such statements made at or prior to the time of signing the lease would constitute fraudulent representations. It will be observed that the statements deal with the future, that they are promissory in their nature, and they cannot be brought within the undoubted rule that to constitute a fraudulent statement it must be a representation with reference to an existing fact, unless it may be possible that the intentions of the party making the representations may be regarded as a statement of an existing fact, viz.: of his *intentions* with reference thereto. The evidence in the case, which I have scrutinized carefully, is barren of anything upon which a decision might be founded, that, when the plaintiff stated he would make certain repairs, he then and there did not intend to make them. All that is proven is that he did not in

fact make them by May first. I think that this opinion might well end right here, and that enough has been said. But it is insistently claimed that the *Adams* v. *Gillig* case is authority for the judgment of the court below, and we will therefore consider that case more in detail. In that action the plaintiff was owner of several vacant lots lying together. Defendant purchased one of the lots, stating that he intended to build dwellings upon the lot, if purchased. As a matter of fact, he did not entertain any such intentions, but the day following the purchase instructed his architect to prepare plans for a garage. The gist of the case as stated by the court (p. 319), is this: " The simple question in this case is, therefore, whether the alleged intention of the defendant to build a dwelling, or dwellings upon the lot which he sought to purchase is such a statement of an existing material fact as authorizes the court to cancel the deed because of the fraud." The court held that the intentions of the defendant, then and there existing, was a material fact, and that he had procured the sale to him by a false statement of a material fact. Therein, the case is to be differentiated from the one at bar, because, as already pointed out, everything claimed to have been said by Hone was promissory and contractual in its nature, and the case is barren of any evidence proving that his intentions were different from his statements. We cannot apply the *Adams* v. *Gillig* case to the one at bar upon any other basis than that of the existing intention of the lessor. In the *Adams* v. *Gillig* case those intentions were proven to have been entirely different from what the defendant stated, the truth apparently being as above stated, that the defendant, on the day following the purchase, made arrangements for building a garage instead of a dwelling, and the court I think might reasonably infer, as it evidently

did infer, that he didn't change his mind over night.
The court said: " In such a case the intention is ma-
terial, and a statement of such an intention is a state-
ment of existing fact." The *Adams* v. *Gillig* case
makes the rule which we are contending for entirely
plain. It states that " it may be said that promises of
future action that are part of the contract between the
parties, to be binding upon them, must be stated in
the contract." It points out that a strict enforce-
ment of the rule tends to greater security in business,
and leaves less opportunity for dishonesty and false
swearing; that the rule makes it necessary for the
parties to a written contract to include everything
therein pertaining to the subject-matter of the princi-
pal contract, and points out that if anything is omitted
the remedy is an action to reform the writing. It says:
" The rule is quite universal that statements promis-
sory in their nature and relating to future actions must
be enforced if at all by an action upon the contract."
The case then goes on to hold that the statements of the
intention of the purchaser, made for inducing the sale
to him, were material, and finds them to have been
fraudulent, and therefore voided the contract. As
above stated, and I trust made clear, the case cannot,
I think, be applied to the one at bar, because of the
entire absence of any proof in the case with reference
to the intentions of Mr. Hone when he said what he
did about what he intended or promised to do. The
promissory nature of his " representations " is made
entirely clear and obvious by a reading of that section
of the complaint which is quoted hereinbefore. We
pass to an examination of the cases cited by the re-
spondent: In *Ash* v. *Meeks,* 134 App. Div. 154, before
the lease was made there was talk of certain needed
repairs which the landlord promised to make; there
was also talk about the heating facilities, which the

landlord assured the prospective tenant were adequate. There was also a cesspool which, when used, overflowed, but the landlord neglected to mention that fact —which could only be learned by use. Later on a lease was prepared and signed — the landlord falsely representing that the repairs talked of *had been made.* This statement was held to be fraudulent; the statement as to the capacity of the furnace was false and was held to constitute a fraud, while the concealment of the facts with reference to the cesspool was held to be also a fraudulent concealment of a fact which the landlord was bound to divulge.

*Hatasatah Realty Co.* v. *Gulick,* 137 N. Y. Supp. 787, cited by respondent, is illustrative of the fallacy of his contention, for in that case the landlord represented, as·an inducement to the tenant to enter into a lease, that the water supply was ample and came from a driven well, whereas it was not ample — failed wholly at times, and in fact came from a brook which often was frozen solid — a clear misrepresentation of an *existing fact.* *LaRoche* v. *Mulhall,* 112 N. Y. Supp. 1115, deals mostly with questions of practice, and the facts are not stated·with enough certainty so that it is of the slightest assistance to us.

In *Gilsey* v. *Keen,* 104 App. Div. 427, there were allegations that the lease was procured by fraudulent representations with reference to the former tenant's reason for leaving, the amount and profitableness of the business done by him, his receipts and running expenses and the then state and value of the business — all of which were representations of alleged existing facts. It is true that there were also claims made of certain other agreements with reference to the purchase of furniture, the formation of a new corporation, and the procuring of a lease of another hotel which was to be run in connection with the one, mentioned in

the lease in suit, and many other similar details.  Evidence of these latter matters was receivable upon the theory that the lease did not cover or even purport to cover *all* of the agreements between the parties — in fact, that it was only one detail of a scheme embracing other and further matters.  In such a case no presumption would arise that all of the agreements would appear in the lease — as for instance, the agreement to form a corporation to take it over, to lease other property, etc.

I do not see that this is any authority for admitting evidence, as in the case at bar, of things which in the natural course of good and ordinary business should and would be put in a lease — like a covenant to repair.

I do not see that the case of *Hill* v. *Chamberlin,* 71 N. Y. Supp. 639, is at all in point, as there the case turned upon certain false promises and representations made to induce a mortgagor to refrain from bidding on the sale of his property. . The oral statements were promises of future action, it is true, but they did not invade a field covered by any written instrument, and hence were received.

*Kley* v. *Healy,* 149 N. Y. 346, was an action in equity to cancel a satisfaction of a judgment.  The complaint alleged that it had been procured by false representations to the effect that the judgment debtor was a member of a specified firm, and that the connection was a lucrative one which would enable him soon to pay off the judgment creditor, whereas if the judgment was allowed to stand it would result in his being expelled from the firm, thus entailing financial ruin and inability to pay the judgment debt.  The trial court found that the defendant was or was about to become interested as a copartner in the firm mentioned.  There was judgment for plaintiff which was reversed by the General Term, which latter judgment

was affirmed by the Court of Appeals whose decision is cited by the respondent here. A careful analysis of the opinion discloses that the plaintiff testified (p. 351), that the representations complained of were to the effect that defendant said he was going to have an interest in the firm, or that he was about becoming interested in it — thus wholly failing to prove her allegations that he said he *was* interested in it. The appellate courts were easily justified in holding, as they did, that there was a failure of proof. I fail to see how the case is of much assistance here. In fact, the summary of the decision rather helps the appellant. The court said: " The burden was upon the plaintiff to show that such a representation, if made, was false and that it was deceitfully and fraudulently made and this she failed to do. It is a familiar rule, where representations consist in mere expressions of hope, expectations and the like, that the party to whom they are made is not legally justified in relying upon them and assuming them to be true. The representation of what one expects, or hopes, as about to take place, in order to induce action on the part of the person to whom made, may be honest, or may be fraudulent. If the former, then no action will lie upon the ground of fraud, if the expectation is not realized. If the representation is made fraudulently and with the intention to deceive, then the evidence must exhibit it in that character. For the presumption will be, in the absence of such evidence, that the person making the representation did so. honestly, however extravagant in his hopes."

Applying that rule to this case, we scrutinize the evidence in vain for any evidence which meets the requirements stated; at most defendant's proof was that plaintiff said he could and would put the premises

in a certain state of repair by a certain date, and that he failed to do so.

The cases are to be differentiated, because the *Kley* v. *Healy* case deals with matters involving the present financial or business standing of the defendant, and his ability to pay, whereas the case at bar contains a promise of a future performance. If there might have been a false statement by the plaintiff of his ability to have the repairs made, there was an utter failure of proof within the rules laid down in the *Kley* v. *Healy* case, imposing upon the defendant here the duty of proving the falsity of the statements made, plaintiff's knowledge of their falsity and the intent to deceive. Clearly, within the rule stated, the intent cannot be inferred from the bald fact that he did not perform, because, to quote from the opinion: " the presumption will be, in the absence of such evidence, that the person making the representations did so honestly, however extravagant in his hopes."

In this case, there is no evidence that the tenant was not obligated to plaintiff. Nothing whatever to prove that the plaintiff in good faith believed he could get possession of the premises in time to make the repairs by May first; in short, there is no proof at all on the subject except the mere fact that the repairs were not completed by May first. This utterly fails to establish fraud.

In conclusion I may say that I have no disposition, whatever, to countenance or condone fraud or false statements. It seems that in this case the jury must have believed the defendant, but for reasons which I have endeavored at considerable length to make plain I am convinced that their findings are contrary to the law. It is idle to consider how they reached the conclusion they did, as long as I am forced to the conclusion that their decision is violative of plain and well

established principles of law. While it may be said that Hone should be made to live up to his promises, I think the plain answer is that, if there were any promises made of the nature claimed, good law and good business would imperatively require that they should be put into the lease in question. The law of the state very properly requires when two parties make a written contract that they shall embody all of the terms of the contract therein, and forbids either party to come into court and say that the contract is only partial, is incomplete, and should have contained other provisions. If this were not so, a written contract would be utterly worthless. Inasmuch, as has already been stated, the evidence in the case fails utterly to establish a fraudulent intention on the part of the plaintiff at the time he made the promises in question, and as the promises, if they were really made, should have been included in the written lease, I reach the conclusion that the plaintiff was entitled to recover in the action, and that the case should never have been submitted to the jury; that the findings of the jury were entirely contrary to the law and the evidence, and the judgment must, therefore, be reversed.

It does not seem to be within the power of this court to render that judgment which according to the tenor of this decision should have been rendered in the court below. It is true that section 3063 of the Code now permits the County Court to " modify " a judgment appealed from. Exactly what is meant by that word, is not very clear. It was added by the laws of 1911, and I am unable to find any adjudication directly in point. It would seem that the consistent thing to do, if it were possible, is not only to reverse the judgment, but to direct a judgment for twenty-five dollars in favor of the plaintiff, but I doubt the power of this court to make such a direction, even under the present

34

form of section 3063. · The Appellate Division in a similar case, ·arising in a court of record, would undoubtedly have such power. Baylie New Tr. & App. 413; *Price* v. *Price,* 33 Hun, 432.

It was said in *Manheim* v. *Seitz,* 21 App. Div. 16, that it is not in the power of the County Court, on reversal of a judgment of Justice's Court, to order a judgment in favor of the other party, and that the County Court should order a new trial in such a case. This decision was rendered before the amendment of 1911, above referred to. The authority of the Appellate Division is in part, at least, defined by section 993 of the Code of Civil Procedure which says that power is given the Appellate Division to either modify or affirm a judgment or order appealed from, and to " award a new trial, or grant to either party the judgment · which the facts warrant." No such language as that quoted above is to be found in any of the provisions relating to the powers of the County Court,. and I therefore assume that all the relief that is possible to grant in this action is a new trial, in addition to a reversal of the judgment. In such a case costs are in the discretion of this court, and I think should be awarded to the appellant.

An order may therefore be prepared reversing the judgment, and granting a new trial herein before the same justice at a date to be fixed when the order is signed, and awarding costs to the appellant herein.

Judgment reversed, and new trial granted, with costs to appellant.