BEN TROJANORSKY, Appellant, *v.* CESARE BOCCAFOGLI, Respondent.

First Department, October 30, 1925.

**Fraud — action for damages — defendant represented to plaintiff that he had job for plaintiff at $125 per week if he owned automobile — defendant agreed to procure new automobile for plaintiff who gave him $3,000 for that purpose — defendant introduced plaintiff to third person as secretary of millionaire who was to employ plaintiff — said statements were false statements of material facts and are actionable — error to dismiss complaint.**

In an action to recover damages for fraud and false representation, it was error to dismiss the complaint at the close of plaintiff's case on the ground that the alleged false statements were promissory only, and that plaintiff did not rely thereon, since it appears that the plaintiff a short time after he entered defendant's alleged school for automobile chauffeurs was told by the defendant that he had a job for him with a millionaire, as chauffeur at $125 a week if the plaintiff owned his own automobile; that the defendant on learning that the plaintiff had $3,000 told him that he would procure a new automobile for him; that plaintiff gave defendant $3,000 for the purpose of buying an automobile; that defendant also promised to get plaintiff a chauffeur's license and subsequently introduced plaintiff to a man whom the defendant represented as the secretary of the alleged millionaire employer; that a new automobile was never delivered to the plaintiff but the defendant did deliver a used automobile; that after the plaintiff had driven the alleged secretary for several days he was informed by the secretary that the employer would not require his services; and that all of said statements were false and were known by the defendant to be false when he made them.

When the defendant represented to the plaintiff that he had a job ready for him at $125 a week, he made a representation of a material fact upon which plaintiff relied and by reason of which he parted with his money.

APPEAL by the plaintiff, Ben Trojanorsky, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 29th day of November, 1924, upon the dismissal of the complaint at the close of the plaintiff's case.

*Charles B. McLaughlin* [*Max Rothman* with him on the brief], for the appellant.

*Guido J. Giudici,* for the respondent.

MERRELL, J.:

The action was brought to recover the sum of $3,000 damages by reason of a fraud perpetrated upon the plaintiff by the defendant.

The court, as appears from the record, believed that the plaintiff had been swindled by the defendant, and at the close of the

testimony and after the defendant had moved to dismiss the complaint for failure of proof, dictated a summary of the facts as testified to by the plaintiff and the plaintiff's witnesses, which the court directed should be submitted to the criminal authorities of New York county for such action as was proper. The court, however, expressed the conviction that the alleged false statements upon which the plaintiff based his claim for recovery of damages were not actionable and were promissory only, and that the plaintiff did not rely thereon. I think the court misapprehended the force of the testimony, and, assuming the truth thereof, as we must, that sufficient facts were proven upon which the jury could have rendered a verdict for damages against the defendant.

The plaintiff was a native of Poland, coming to this country some sixteen years prior to the trial. He married in 1917 and had one child. He first worked as a common laborer until the breaking out of the World War, when he became employed as a carpenter in the Government shipyards, for which work he received $10 a day. He and his wife had saved some $3,000 in June, 1922, and desiring to better his condition he answered an advertisement of the defendant who conducted a school for automobile chauffeurs in the city of New York. The plaintiff attended the school from early in June until the thirteenth of that month when, he testified, the defendant summoned him to his office and asked him if he wanted a good job. A few days later, on July 3 or 4, 1922, the defendant again called the plaintiff to his office and asked him if he wanted a good job. The plaintiff replied in the affirmative, and testifies that the defendant then said to him: " I have a job for $125 a week, but you got to have your own car." Plaintiff testifies that he then told the defendant he could not get that job because he had no car, to which the defendant replied that he could get a car for him; that the plaintiff then told him that he did not have enough money; that the defendant then inquired how much money the plaintiff had and the latter replied that he had around $3,000; that the defendant said that that was enough, and that he was going to get the car for the plaintiff. Plaintiff testifies that he then told him that he, plaintiff, would have to consult his wife, and that the defendant immediately sent a messenger to bring his wife to the defendant's office. The messenger returned and reported that plaintiff's wife was washing and could not come; that thereupon the defendant stated that he had to act quickly and wanted to close the matter that day; that there was another fellow there who was bothering him to take the job, but that he did not want to give it to him, as he was single and that married men like the plaintiff were steadier. Plaintiff testified further that

he then told the defendant that he knew he was not yet experienced as a chauffeur, and that the defendant replied that he would guarantee him the job, and that he himself used to serve the man for a year and knew him very well and also knew his secretary. Plaintiff testified that the defendant represented that the prospective employer was a millionaire, but did not disclose his name; that the defendant said he would get plaintiff's license as a chauffeur the following week. The plaintiff testified that when they reached the plaintiff's house the defendant explained to the wife the $125-a-week job which he had for the plaintiff, and that the sister of plaintiff's wife was present and heard the conversation; that upon such representations that he had the job ready for the plaintiff, and that he would guarantee that the plaintiff would hold the job for a year, and that he would go before a notary and have a guaranty drawn up to that effect, the plaintiff was induced to withdraw from the bank where his savings were on deposit to the amount of $2,800 the sum of $2,795; that he took from his house $205 in cash, and turned over the $3,000 in cash to the defendant at a house on St. Nicholas avenue where the defendant represented his mother lived; that the defendant told him he did not wish the money paid elsewhere, as people would see. Plaintiff testifies that they then went to Sixty-fifth street where the defendant was supposed to procure plaintiff's license on the same day; that no license was procured, and that they then went to the office of the defendant, where a receipt was drawn up for the $3,000. The defendant introduced to the plaintiff one Silvio, whom he represented to be the secretary of the millionaire in whose service the plaintiff was to enter, and that the defendant told the plaintiff that Silvio would take care of him and that whatever Silvio told him to do he should do; that plaintiff saw Silvio there every day at defendant's place of business. Plaintiff testifies that on several occasions he asked the defendant to go to the notary and have the guaranty drawn up, but that the defendant pleaded business engagements and put him off from day to day; that on the Saturday following the payment of the money, the defendant, without notifying the plaintiff, left for Italy; that before going he delivered to the plaintiff an old Cadillac car, saying that after a few days he would give him a good and new car as he had promised. Plaintiff testified that during the days of the week following defendant's departure for Italy he went daily to the Woodward Hotel and there met Silvio, the pretended secretary of plaintiff's millionaire employer, and that the " secretary " had him drive him to various places; that he was never introduced to his millionaire employer and never was told his name by Silvio, the pretended secretary,

and never saw him; that he received no pay whatever for his week's services. Plaintiff testifies that after he had been thus engaged for a week Silvio told him his employer had changed his mind and was not going to use him any more and advised him to sell the car which he had and to bet the proceeds on a horse race, Silvio representing to him that his boss, the millionaire employer, was the owner of the race horse, and that the race had been fixed, and that he would get all of his money back, and that if the horse did not win the race then the millionaire employer would pay back to the plaintiff what he had bet. Plaintiff testified that he acceded to the representations and suggestions of Silvio, and that Silvio, who had possession of the money realized on the sale of the car, claimed to have bet it and afterwards informed him that they had lost their bet and that the millionaire would not make good and did not wish to employ him longer. Plaintiff testifies that he called upon the defendant upon his return from Italy, but that the latter would not talk with him and ordered him from his place of business. The plaintiff's wife and sister-in-law corroborated the plaintiff in his testimony as to what occurred at the house when the plaintiff and defendant went to the plaintiff's house and obtained the money. Both corroborating witnesses testified that the defendant stated that he had the job ready for the plaintiff and that it would pay him $125 a week.

At the close of the evidence counsel for the defendant moved for a dismissal of the complaint for lack of proof, and particularly that the plaintiff had failed to make out a cause of action for fraud and false representation. Thereupon the court dictated a *résumé* of the facts as testified to, as the court understood them, and held that it did not appear that the plaintiff relied upon the representations made by the defendant, although it appeared that the representations were false and were known by the defendant to be false when he made them. The court held that the representation of the defendant to which the plaintiff testified that the defendant had a permanent position as a chauffeur for the plaintiff which the plaintiff could then and there have, was a promissory statement and could not be the basis of an action for fraud.

It seems to me that the court was clearly in error in his interpretation of the effect of the testimony of the plaintiff. The testimony of the plaintiff must be taken as true for the purposes of the motion to dismiss, and when the defendant represented to the plaintiff that he had a job ready for the plaintiff that would pay him $125 a week in advance, he made a representation of a material fact upon which the plaintiff relied and by reason of which he parted with his money. According to the testimony of

the plaintiff, of the plaintiff's wife and her sister, the representation of the defendant was: " I have got a good job for your husband. It pays $125 a week, but he has to have his own car." The testimony was sufficient to justify the jury in finding that the defendant had no such job as he represented. There was no promise to obtain a job, but the statement of the defendant was that he had the job. The necessary elements upon which to base an action for false representations are that the representation of a material fact was made; that such representation was false and known to be false by the party making it; that the party to whom it was made relied upon it to his injury. (*Arthur* v. *Griswold*, 55 N. Y. 400, 405.)

" There must have been a false representation, known to be such, made by the defendant, calculated and intended to influence the plaintiff and which came to his knowledge, and in reliance upon which he, in good faith, parted with property or incurred the obligation which occasioned the injury of which he complains." (*Brackett* v. *Griswold*, 112 N. Y. 454, 467.)

It seems to me that the plaintiff fully met all the requirements to establish a right of recovery for fraudulent representations made to him. By his own testimony and that of his wife and sister-in-law he proved that the defendant told him that he had a job with a millionaire and that all that was necessary was for him to pay $3,000 with which the defendant would obtain for him a new car with which to discharge his duties. The evidence would surely justify a finding that the defendant had no such job, and he certainly did not procure for the plaintiff the new car promised. The job with the millionaire was a myth, and Silvio, the pretended secretary, if not related to the defendant, was a hanger-on at his establishment. The evidence would justify a finding that the defendant well knew the falsity of the representation which he was making and that it was made for the purpose of inducing the plaintiff to part with his money, and that by reason of the alluring representation thus made to the plaintiff the latter did part with his money to the defendant. As was said in *Ritzwoller* v. *Lurie* (225 N. Y. 464, 468): " It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur. Such statements and representations when false are actionable within the authority of *Adams* v. *Gillig* (199 N. Y. 314)." (See, also, *Deyo* v. *Hudson*, 225 N. Y. 602, 611.)

The judgment entered in favor of the defendant should be

reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., FINCH, McAVOY and BURR, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.